TRI-STATE LUMBER & SHINGLE CO., APPELLANT, v. DAVID M. PROCTOR, RESPONDENT.—128 S. W. (2d) 1116.

Kansas City Court of Appeals. May 29, 1939.

*W. F. Wilkinson* and *W. Raleigh Gough* for appellant.

*David M. Proctor* pro se.

BLAND, J.—This is an action, in two counts, upon a written guaranty of two promissory notes. The case was tried before a jury, resulting in a directed verdict in favor of plaintiff in the sum of $855.21 on count one and a directed verdict for defendant on count two of the petition. Judgment was entered accordingly. Defendant filed a motion for a new trial on count one and plaintiff filed a motion for a new trial on count two. Both motions were sustained. Plaintiff has appealed from the judgment granting defendant a new trial but no appeal has been taken by the defendant.

Count one involves an alleged guaranty by defendant of a note referred to in the evidence as the "Hale note" and count two his guaranty of the "Clough note."

The facts show that plaintiff is a corporation engaged in the wholesale lumber business in Kansas City; that prior to the fall of

1927, plaintiff had sold a large amount of lumber to the H. B. McCray Lumber Company, a corporation of Kansas City; that the latter owed plaintiff a substantial amount of money therefor on an open account which, in the fall of 1927, was due and payable; that plaintiff's president, Mr. Arthur T. Brink, made demand upon the H. B. McCray Lumber Company, through its president, Mr. H. B. McCray, for the payment of the account; that McCray told Brink that his company could not make payment in cash. However, McCray stated to Brink that the Becker Building Company owed the McCray Lumber Company a balance of $5000 for lumber that the Becker Building Company had purchased from it for the building of certain houses in Kansas City; that the Becker Building Company had sold a number of these houses and had taken second mortgage notes back from the purchasers and McCray suggested to Brink that the McCray Company would procure from the Becker Company some of these second mortgage notes and deliver them over to plaintiff to be applied on plaintiff's bill against the McCray Company. Shortly after McCray made this suggestion, he took up the matter with defendant, who owned one-half of the stock of the Becker Company and looked after its financial affairs, and it was finally agreed that the Becker Company would deliver over to the McCray Company two second mortgage notes (the Hale and Clough notes), which Brink had theretofore indicated he was willing to take in plaintiff's behalf at a discount of 20 per cent on their face value. There was an agreement between defendant and the McCray Company that the Becker Company should have credit on the books of the McCray Company for a like amount.

A meeting was then arranged at plaintiff's office, which meeting was had on or about January 13, 1928, where defendant and the McCray Lumber Company, through H. B. McCray, signed a written guaranty on the back of the so-called Hale note, which is the subject matter of count one of the petition in this case.

Plaintiff made some collections of the principal and interest of this note, but thereafter default was made in the payments thereon and plaintiff foreclosed under its second mortgage, buying the property in for $800. Later, there was a foreclosure under the first mortgage and plaintiff lost the property. The McCray Lumber Company afterwards went into receivership and plaintiff, on account of the McCray Company's guaranty, collected certain dividends in that proceeding. Demand was then made upon defendant for the balance on account of his guaranty. Defendant refused to pay and this suit followed. At the trial the parties stipulated that the balance due on the Hale note, including interest to the date of the trial, was the sum of $855.21.

It is insisted by the defendant that there was no consideration for his guaranty of the note. This contention will require a careful consideration and a more detailed statement of the testimony.

Mr. Brink testified that in the fall of 1927 he had his first conversation with McCray relative to the McCray Company paying plaintiff's account, at which time McCray suggested that plaintiff take some of the second mortgage notes owned by the Becker Company. However, Brink testified that McCray did not mention the Becker Company to him but told him that the second mortgage notes were owned by the defendant. Brink testified:

"Q. What did you tell him (McCray)? A. First I told him, 'no.' I didn't see how we could use them, and *finally*, the account remained open such a great length of time we thought something should be done about it, because we could not continue to extend to McCray credit without the account being in better shape. *Finally*, I told him if he would get Mr. Proctor (defendant) to give us some suitable second mortgages somewhat in line with the amount of the account, and if Mr. Proctor and Mr. McCray would both guarantee the account, these mortgages, I would take them and apply them on the account.

"Q. Subsequent to that, Mr. Brink, did you have a meeting with McCray and Mr. Proctor? A. We had several meetings. The *final one*, in which Mr. McCray and Mr. Proctor both came in the office with these notes.

"Q. Now, was the matter discussed between you and Mr. McCray and Mr. Proctor all there together? A. Yes, we were there in my office. Q. And what was said, tell what was said and who said it in those conversations? A. I told Mr. McCray what we really wanted was the money, but in as much as he didn't have the money and Mr. Proctor was not able to pay him and he consequently was not able to pay me, that I was doing the next best thing by taking those guaranteed notes. Q. What was said about the guaranty of the notes? What was said about the requirement that the notes be guaranteed? A. Well, there were four of us in the office. Mr. Proctor, Mr. McCray, Mr. Wilkinson (plaintiff's attorney) and myself. Q. Who is Mr. Wilkinson? A. Mr. W. F. Wilkinson. Q. He was there as your attorney, was he? A. Yes, sir. Q. All right. A. And Mr. Proctor and Mr. McCray came in. Mr. Wilkinson knew they would be there. The four of us were there, and we placed—we wrote a guaranty on the back of the notes and Mr. McCray and Mr. Proctor both signed them. I told Mr. McCray again at that conference that I really wanted the money. Mr. Proctor remarked at that time that these were good notes and they were just as good as money, we would have no trouble collecting them, and suggested that we could leave them at his office and that he would collect the payments as they were made and remit to us. I recall nothing that was said at those meetings other than what I have stated. . . . It is my recollection that the Hale note was delivered first on about the 16th (13th) of January, but it was not credited on the books until several months after that."

Brink further testified that the credit was made on June 21, 1928, when a credit of $1427.15 was given the McCray Company on plaintiff's books; that the Hale note was not accepted by plaintiff until that amount was credited upon its books; that when the note was delivered to him the guaranty had been executed. "Q. Did it all occur at one meeting? That is, the note was guaranteed—was signed and you accepted it right there? A. It is my recollection that they came in the office together and they both signed it at my desk. Q. Signed what? A. Signed the guaranty of the note. Q. And then what happened? A. I credited the note to H. B. McCray's credit on our books. Q. Did you take the note? A. Yes, I took the note and put it in our safe."

Later on Brink testified that it was his understanding with McCray *prior to the time of the meeting in plaintiff's office on January 13,* that defendant would become a guaranty upon the notes. He further testified that he did not think that he talked with the defendant until after the latter was in the office the day that the latter brought the Hale note in; that the guaranty was put on the back of the note at that time; that the witness thought he typed the guaranty himself. "Q. That was after the note was delivered to you? A. It was in the office and we put that guaranty on and Mr. Proctor signed it and Mr. McCray signed it. Q. Well, the note was in your possession. It must have been if you put the guaranty on it? A. No, it was there on the desk. I hadn't taken it. We were just finishing up the details of this thing."

McCray testified that when he talked to Brink about plaintiff taking, as a payment on plaintiff's account against the McCray Lumber Company, second mortgage notes belonging to the Becker Company that he obtained from the bookkeeper of the Becker Company a list of such notes and that Brink finally chose two of them which plaintiff would take at a discount; that the witness doubted whether the question of defendant becoming a guaranty on the notes was ever discussed between defendant and himself until the meeting when the guaranty was signed. With reference to what occurred at that meeting he testified: "Well, they both were there at the time we were in the office, if my memory serves me correctly, and Mr. Proctor and I went there for the purpose of delivering the second note and endorsing the two notes, guaranteeing the two notes. That is my recollection. I do not believe Mr. Proctor and I ever were in Mr. Brink's office excepting the one time;" that he did not think that the three of them were ever together at any time previous to the one in question; that Brink took the notes with the understanding that they were to be guaranteed.

Defendant testified that in the latter part of November or December, 1927, McCray and the bookkeeper for the Becker Company spoke to him about the proposition of selling some of the notes to the plain-

tiff which belonged to the Becker Company; that he did not remember the conversation exactly but the substance of it was that if the Becker Company wanted to sell "perhaps a couple" of the notes to the plaintiff that the McCray Company would give the Becker Company credit for what the notes brought and the plaintiff, would give the McCray Company credit on plaintiff's account against it; that the Becker Company made a list of six to ten notes describing the property on which the second mortgages securing the notes had been given and giving information about them, and "we sent the list of notes to Mr. Brink;" that "we didn't send him the notes, just the list of notes. I had never met Mr. Brink, but as I recall some week or two thereafter I think that he called me (over the telephone) and said that he would be interested in a couple of these notes and he mentioned the Hale note and the Clough note. We discussed the amount of the discount and I told him that we would sell them on a 20 per cent discount basis. *He said he was interested in these notes and would take them on that basis provided that it was understood that the amount of the purchase price—that is, the total purchase price, deducting the discount—would be credited to McCray Lumber Company so that McCray Lumber Company in turn could get a credit with the Tri-State Lumber & Shingle Company for a part of their account.* And, I told him there was no objection to that, that we would sell those notes on that basis, and I told him that those two notes in my opinion were about as good if not the best notes, we had, at least, as good as any. I don't remember just what transpired thereafter, the number of days, but in the meantime I got word, I think I got word from his office or from Mr. Brink himself, that if we would bring the notes over there some day that he would close the deal.

"I got in touch with Mr. McCray and told him that we were about to close the deal on those notes and I supposed that we had both better go over there and get our credits." Defendant further testified that, at no time prior to his going to plaintiff's office was any mention made either by Brink or McCray concerning a guaranty; that he and McCray went to plaintiff's office at the time the guaranty was signed "and I had these two notes, the Hale note and the Clough note, and they had been endorsed on the back by J. P. Randol, who was a straw person, an agent for the Becker Building Company;" that "as I recall, Mr. Brink was sitting in his office and at his desk and we handed the notes to him. He glanced over them and while he was glancing over them I remember telling him about the change that had occurred with reference to the ownership of the Hale property . . . and then Mr.—I think that Mr. Wilkerson (plaintiff's attorney) was in there at the same time. Mr. Wilkerson and Mr. Brink had a little conversation right there in our sight, but I don't know that we overheard what they said, but they had a little

conversation, and then either Mr. Brink wrote out that form of guaranty on the back of those notes or he instructed a girl to do it in his presence, sitting right there, and that was done, and he turned around to Mr. McCray and me and he said, 'I want you, the McCray Lumber Company, and you, Mr. Proctor, to sign this guaranty on these notes.' Mr. McCray and I looked at each other in the presence of Mr. Brink there and we said, 'Well, the notes, I guess, are good,' and without any conversation at all or without any bickering we signed them. *In the meantime, while the conversation was going on,* it was understood what the credits were I think I had a sheet of paper that showed what the credit was to be to us and McCray gave me a receipt for the Becker Building Company and I think he at the same time got some kind of a paper from the Tri-State as to what its credit would be on their account."

Defendant further testified that after this he and McCray left.

The witness further testified that he signed the guaranty because he thought "it was more or less of a formality at the time;" that it never occurred to him that the equities in the properties on which the second mortgages had been given to secure the notes would not be entirely adequate to take care of them; that it did not help the Becker Company to pay, at that time, the McCray Company the money represented by the notes; that the McCray Company would have carried the Becker Company for thirty to ninety days longer and that the Becker Company was not being threatened by suit or bankruptcy; that the payments upon the houses that the Becker Company had built and sold were coming in at the rate of about $1500 per month, which was being turned over to its creditors and "nobody was pressing us"; that three or four months after he signed the guaranty the Becker Company paid off the balance due the McCray Company.

Defendant further testified that he, individually, received nothing for his guaranty.

One of the assignments of error in defendant's motion for a new trial was that the court erred in "directing the jury to render a verdict for plaintiff." As the trial court did not specify the ground upon which it sustained the motion it will be assumed that the court sustained it on the ground above referred to set up in the motion for a new trial. [Inzerillo v. C. B. & Q. R. R. Co., 225 Mo. App. 1213.]

Of course, when the question of a demurrer to the evidence is involved we must take the evidence, and all reasonable inferences that may be drawn therefrom, in the most favorable light to the party against whom the verdict was directed and, even if the evidence is undisputed, if more than one inference may be drawn therefrom, one of which sustains one party and one the other, we must take those inferences that are most favorable to the party losing the verdict. [Bell v. Kansas City Life Ins. Co., 71 S. W. (2d) 135, 138.]

Plaintiff contends that the court properly directed a verdict for it because Brink, previous to the meeting on January 13, 1928, told McCray that he would require defendant's guaranty of the notes as a condition to accepting the notes and it makes no difference whether defendant knew of the arrangement had between plaintiff and the McCray Company that plaintiff would take its note if defendant would execute a guaranty for its payment; that on January 13, 1928, at the time the deal was closed, Brink requested the guaranty and it was executed by the defendant; that "aside from the disagreement of the witnesses as to whether or not plaintiff had, in the negotiations preceding the final delivery of the note, demanded the execution of the guaranty—all the witnesses are agreed that, before the note was actually delivered and accepted, plaintiff requested defendant to guarantee the note and defendant complied with that request and signed the guaranty."

Plaintiff says that under these circumstances there was sufficient consideration for defendant's guaranty of the payment of the note in question.

It is well settled that "an endorsement for purposes other than for transfer, by a person other than the payee or the holder of the instrument, requires a valid consideration to support it, whether placed on the instrument before or after delivery." [10 C. J. S., p. 639.] However, where a party purchases a note on the faith of a guaranty, it is sufficient under some circumstances, that a consideration pass between the vendor and the purchaser of the note. [Adams v. Huggins, 78 Mo. App. 219.]

In this case, if there was an agreement between plaintiff and the McCray Lumber Company, made before the delivery of the Hale note to the plaintiff, that defendant executed a guaranty for its payment and the guaranty was signed before, or at the time of the delivery of the note to plaintiff, then there was sufficient consideration for the signing of the guaranty, even though defendant did not know of the agreement; but if he signed the guaranty after the delivery of the note to the plaintiff, there was no consideration for the giving of the guaranty, unless he knew of the agreement. On the other hand, if the agreement had between plaintiff and the McCray Company that plaintiff would take the note if defendant would sign a guaranty for its payment, was made subsequent to the delivery of the note, the guaranty must have been supported by a new consideration. [10 C. J. S., pp. 600, 639; Adams v. Huggins, *supra;* Hill v. Coombs, 93 Mo. App. 264; General Motors Accpt. Corp. v. Holland, 30 S. W. (2d) 1087; Howard v. Jones, 10 Mo. App. 81; Howard v. Jones, 13 Mo. App. 595; McMahan v. Geiger, 73 Mo. 145; The County of Montgomery v. Auchley, 92 Mo. 126; Eitel v. Farr et al., 178 Mo. App. 367; Persia Savs. Bank v. Wilson, 214 Iowa, 993, 998; King v. Wise (Tex.), 282 S. W. 570; Greenwood v. Lawson (Vt.), 168 Atl. 915.]

It naturally follows that if there was no such agreement at any time between the plaintiff and the McCray Company, the guaranty was purely voluntary and, consequently, there was no consideration for it.

We think that, from the testimony in this case, and all reasonable inferences that may be drawn therefrom, the jury could have found that there was never at any time any agreement between plaintiff and the McCray Company that a guaranty of the note was to be executed by defendant, and that the request made by Brink at the meeting on January 13, 1928, that defendant and the McCray Company guarantee the note, was merely an afterthought. We are also of the opinion that the jury could have found that the guaranty was signed after the delivery of the note to the plaintiff and, as a matter of fact, if there was an agreement between plaintiff and the McCray Company that it be given, defendant did not know of the agreement. If the jury had found either one of these propositions to be true, then, it would have been their duty to have found that there was no consideration for the giving of the guaranty, and have rendered a verdict for defendant. [See cases last cited.]

There is ample in the record from which the jury could have found that there was no agreement, at least prior to the meeting of January 13, 1928, between plaintiff and the McCray Company that a guaranty be given by defendant. Brink's testimony is very indefinite as to when the agreement was made. In the first part of his testimony he stated that "*finally*" he told McCray that defendant's guaranty would be required and that the "*final*" meeting was the one when McCray and defendant came to plaintiff's office. When he was asked what was said about the requirement that a guaranty be given for the payment of the notes, he answered: "Well, there were four of us in the office, Mr. Proctor, Mr. McCray, Mr. Wilkinson and myself." The undisputed evidence shows that there was only one meeting where the witness, McCray and the defendant, were present and that was when the guaranty was signed and the witness, of course, had reference to that meeting. It is difficult to ascertain from this testimony whether the requirement was made before or at the time of the meeting.

There was later testimony on the part of Brink, and also testimony on the part of McCray, from which the jury could have inferred that the guaranty was required by Brink prior to the meeting on January 13, 1928; but would the jury have been required, as a matter of law, to so find? We think not. Neither Brink nor McCray were definite as to the time the requirement of the guaranty was made by Brink. There is no reason why they could not have stated positively whether it was before the final meeting. If there had been any such requirement before the trial meeting why was not defendant told about it? He talked to Brink over the telephone

prior to the day the guaranty was signed and to McCray, in person, prior to that day, and neither one of them told him of the requirement. According to defendant's testimony, when he talked with Brink over the telephone, the latter agreed to take the note without mentioning any guaranty.

Under all of the circumstances, it was for the jury to say whether any such requirement was made, at least, prior to the final meeting, and according to defendant's testimony, there was no such requirement made even at that time. According to his testimony there was no conversation at that time to the effect that Brink or plaintiff would not take the note unless the guaranty was made. If, at the time of the delivery of the note Brink had stated he would not accept it until defendant executed a guaranty for its payment, a different situation would have been presented. Brink tried to say that plaintiff did not accept the note until June 21, 1928, but this is so contrary to the true situation that even plaintiff, in its brief makes no such contention but admits that the note was accepted at the meeting had on January 13, 1928.

Taking the evidence in its most favorable light to defendant, the jury could have found, as before stated, that there was no agreement, at any time, between plaintiff and the McCray Company concerning the guaranty, but that the guaranty was purely a voluntary one made at the request of Brink as an afterthought and after the transaction, concerning the taking and delivery of the note, had been completed. We say that the jury could have found that the guaranty was requested after the completion of the transaction because defendant testified that, after he handed Brink the note, and before the guaranty was signed, he had a conversation with Brink concerning the transference of the ownership of the Hale property and that Brink and plaintiff's attorney had a private conversation, which defendant did not hear and "in the meantime, while the conversation was going on," that is before the guaranty was signed, "it was understood what the credits were" and McCray gave defendant a receipt for the Becker Company, and, at the same time, McCray got one from plaintiff "as to what its credits would be on their account." In other words, during the conversation and, before the signing of the guaranty, defendant and McCray were given receipts showing what were the credits on their respective accounts, thus indicating that Brink had accepted the note before the signing of the guaranty. After the business of the meeting was completed McCray and defendant left.

If defendant executed the guaranty after the delivery of the note there was no consideration for his doing so unless he knew of the agreement at the time. The evidence shows that even if there was such an agreement, defendant did not know of it.

Of course, there was ample testimony, and inferences to be drawn

therefrom, contrary to the theory of the evidence that we have evolved looking at the testimony from defendant's standpoint, but the jury should have been the judge of which theory it would accept.

In its petition plaintiff unnecessarily pleaded that there was a consideration for the guaranty but defendant pleaded a lack of consideration therefor. In view of the fact that plaintiff undertook the pleading of a consideration, the question arises as to upon whom the burden was to show a consideration or lack of it. Assuming that the burden was upon the defendant to show a lack of it, we think there was ample in the testimony from which the jury could have concluded that there was no consideration for the signing of the guaranty. Consequently, the court committed no error in granting defendant a new trial and the judgment should be affirmed, and it is so ordered. All concur.