**STEWART TITLE GUARANTY COMPANY, Respondent,**

v.

**WKC RESTAURANTS VENTURE CO., et al., Appellants.**

No. WD 53511.

Missouri Court of Appeals, Western District.

Jan. 27, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1998.

As Modified March 31, 1998.

Bruce Keplinger, Overland Park, Norris, Keplinger & Logan for appellants.

Dale L. Beckerman, Deacy & Deacy, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Allen J. Block, David M. Block, co-trustee of David M. Block Trust, Jay Friedman, James E. Grier, William Logan, Hal M. Danzig, and C. Maxwell Logan[1] appeal the trial court's order entering partial summary judgment in favor of Stewart Title Guaranty Company (Stewart Title) on Stewart Title's action to enforce a guaranty. The guaran-

1. For simplicity's sake, this court will refer to the appellants as "the guarantors."

tors argue that genuine issues of material fact exist regarding (1) whether the guaranty was executed contemporaneously with the note; (2) the amount of damages the guarantors owe; (3) whether the foreclosure on the collateral by a third party constituted a material alteration of the principal contract; (4) whether the guarantors are accommodation parties and entitled to set-off; (5) whether the note is non-recourse and the guaranty should not be broader; and (6) whether provisions of the guaranty violated the Equal Credit Opportunity Act (ECOA). The guarantors also appeal the trial court's order overruling their motion for leave to file an amended answer to Stewart Title's petition to include the following two affirmative defenses: (1) the guarantors are entitled to a set-off because they relied on Stewart Title's negligent misrepresentation that the mortgage they were guaranteeing was a first mortgage; and (2) the guarantors are entitled to a set-off because they are accommodation parties, and Stewart Title is not a holder in due course. Because this court finds that there is no genuine issue of material fact that the guarantors executed a valid and enforceable guaranty, and none of the guarantors' pleaded or proposed affirmative defenses would have prevented Stewart Title from recovering on the guaranty, the judgment of the trial court is affirmed.

On appeal from an order granting summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The facts, in the light most favorable to the guarantors, are that WKC Restaurants Venture Company (WKC) was a general partnership. Two of the partners in WKC were the WRVC Investment Company (WRVC), and Restaurant Land Partnership, both general partnerships. Allen J. Block, David M. Block, co-trustee of David M. Block Trust, Jay Friedman, James E. Grier, and W.H. of K.C., Inc., a Kansas corporation, were partners in the WRVC partnership. William Logan, Hal M. Danzig, and C. Maxwell Logan were partners in Restaurant Land Partnership.

On September 29, 1986, WKC executed a promissory note in the principal amount of $720,000 in favor of Home Savings Association of Kansas City, F.A, to refinance an earlier loan from Home Savings in the same amount. The collateral for the loan was a deed of trust on WKC's Wendy's restaurant located at 31st and Main in Kansas City, Missouri, a collateral assignment of leases and rents affecting the property, and a security agreement affecting the property. There was also a guaranty, dated that same day, executed by Leon Karosen and his wife, Mary Karosen, James H. Block and his wife, Rae Alene Block, Allen J. Block and his wife, Gloria Block, David M. Block, co-trustee of David M. Block Trust, Jay Friedman, James E. Grier and his wife, Virginia Grier, William Logan and his wife, Judith R. Logan, Hal M. Danzig and his wife, Carolyn Danzig, C. Maxwell Logan and his wife, Heidi E. Logan, guaranteeing the payment of "all principal, interest, and all other charges due" under the promissory note. Each of the guarantors agreed to be liable under the guaranty in an amount equal to, but not exceeding, a portion of the $720,000 equal to 133% of the guarantor's interest in the WKC Restaurants Venture Company partnership. Stewart Title was the title insurance company on the refinancing transaction, and it issued a lender's title policy to Home Savings in the amount of $720,000. The title policy showed Home Savings as the first mortgage holder on the property. The loan transaction closed on November 26, 1986.

In 1992, Home Savings became insolvent. The Resolution Trust Corporation (RTC), as receiver of Home Savings, assigned the WKC note to Chemical Bank, N.A. WKC made monthly payments on the promissory note from November of 1986 up to and including April of 1993. However, on July 9, 1993, the trustee for industrial revenue bonds issued on a parcel of land that included the collateral for the loan foreclosed on the property. The Wendy's restaurant was sold at a foreclosure sale to Security Bank of Kansas City, as trustee for the Land Clearance for Redevelopment Authority of Kansas City, Missouri Revenue Bonds. Home Savings did not hold a first mortgage as Stewart Title had erroneously represented in the lender's

title policy Stewart Title issued in its capacity as title insurer. Chemical Bank presented a claim for $720,000 to Stewart Title under the title policy. On September 19, 1994, Stewart Title paid the claim, and in return, Chemical Bank assigned the WKC note to Stewart Title.

In October of 1994, Stewart Title, as the note holder, filed a petition against WKC, WRVC, Restaurant Land Partnership, and all of the partners in those partnerships, as makers of the note, seeking payment of the balance due on the note, plus interest, late charges, attorney's fees, and court costs. The remaining ten counts were against the guarantors of the note, and sought each guarantor's portion, pursuant to the formula in the guaranty, of the balance due under the note, plus interest, late charges, Stewart Title's attorney's fees, and costs. In their answer filed in May of 1995, the guarantors asserted the following five affirmative defenses: (1) Stewart Title's petition failed to state a claim upon which relief could be granted; (2) Stewart Title failed to mitigate its damages; (3) if the guarantors were liable, their liability was released and discharged because Stewart Title failed to pursue persons or entities that were or may have been jointly and severally liable; (4) the guaranty was void because it was made in violation of the Equal Credit Opportunity Act; and (5) Stewart Title was barred from recovering against the guarantors because the makers of the note have no personal liability, and the obligations of any guarantors cannot exceed the obligations of the makers.

Stewart Title moved for partial summary judgment against the guarantors for their respective portions of the unpaid principal balance of the note, interest, late fees, and attorney's fees. The guarantors then filed a motion for leave to file an amended answer. The proposed amended answer added two affirmative defenses, namely, that the guarantors were entitled to set-off because they relied on Stewart Title's negligent misrepresentation that the mortgage they were guaranteeing was a first mortgage, and that the guarantors were entitled to a set-off because they were accommodation parties, and Stewart Title was not a holder in due course. The guarantors also moved for summary judgment, based upon their contention that there was a material alteration of the underlying contract that, as a matter of law, discharged them from their obligation under the guaranty. The guarantors' defenses were based on the premise that the guarantors did not know the priority of liens on the Wendy's property the guarantors owned through their partnerships, and that they relied on Stewart Title's misstatement that the Home Savings mortgage was a first lien.

On July 8, 1996, the trial court entered an order overruling the guarantors' motion for leave to file an amended answer and the guarantors' motion for summary judgment. The trial court sustained Stewart Title's motion for partial summary judgment, and ordered the guarantors to pay their respective portions of liability on the note based upon the formula in the guaranty.[2] The court declined to order the guarantors to pay attorney's fees and costs in addition to their liability on the note, finding that Stewart Title's recovery against the guarantors was limited by the guaranty and did not include expenses of enforcement, costs and attorney's fees. Stewart Title did not appeal this ruling. In its order for partial summary judgment, the court found that there was no just reason for delay; thus, the partial summary judgment is a final and appealable order. See Rule 74.01(b).

Review of summary judgment is conducted in the same manner as review of a court-tried case, and the judgment will be sustained if any theory supports it. *AG Processing v. South St. Joseph Sewer*, 937 S.W.2d 319, 322 (Mo.App.1996). "The criteria on appeal for testing the propriety of summary judgment are no different from

---

2. Stewart Title sought, and the trial court entered, partial summary judgment against Allen J. Block, David M. Block, co-trustee of David M. Block Trust, Jay Friedman, James E. Grier, William Logan, Hal M. Danzig, and C. Maxwell Logan only. Stewart Title did not seek partial summary judgment against Leon Karosen (now deceased), Mary Karosen, James H. Block (now deceased), Rae Alene Block, Gloria Block, Virginia Grier, Judith R. Logan, Carolyn Danzig, and Heidi E. Logan.

those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT*, 854 S.W.2d at 376. Here, Stewart Title was the movant. A movant must establish that there is no genuine dispute as to every material fact necessary to support the claim and a right to judgment as a matter of law. *Id.* at 381. Once the movant has made a prima facie showing, the non-movant may not rely upon "mere allegations or denials. of his pleading," but must respond by affidavits, or as otherwise provided in Rule 74.04, and provide the court with specific facts demonstrating a genuine issue for trial. *Id.* Conclusory allegations are insufficient to defeat a motion for summary judgment. *McDowell v. Waldron*, 920 S.W.2d 555, 561 (Mo.App.1996). Additionally, because the guarantors raised several affirmative defenses, Stewart Title must show that each affirmative defense fails as a matter of law, by establishing that any one of the elements necessary to support the defense is missing. *ITT*, 854 S.W.2d at 381.

■ The first step in deciding whether the grant of summary judgment was proper in this case is to determine whether Stewart Title established the material facts necessary to recover on the guaranty. To recover on the guaranty, Stewart Title must prove (1) that the guarantors executed the guaranty; (2) that the guarantors unconditionally delivered the guaranty to Home Savings, the original creditor; (3) that Home Savings thereafter extended credit to WKC in reliance on the guaranty; and (4) that WKC owes the creditor, who is now Stewart Title, a sum of money which the guaranty purports to cover. *Id.* at 382.

In their answer, the guarantors specifically admitted executing the guaranty. Stewart Title attached a copy of the guaranty to the petition. The copy of the guaranty contains the signatures of the guarantors. There is no dispute on the issue of whether the guarantors executed the guaranty.

On the element of whether the guarantors unconditionally delivered the guaranty to Home Savings, the guarantors argue that the transaction was conditioned upon the mortgage to Home Savings being a first mortgage. They presented affidavits signed by William Logan, David M. Block, co-trustee of the David M. Block Trust, and C. Maxwell Logan, stating that they, and all of the other guarantors to the loan transaction, signed the guaranty with the understanding that the security interest WKC was granting to Home Savings was a first mortgage. They also stated in the affidavits that all of the guarantors understood that under the guaranty agreement, the guarantors would be subrogated to the interests of Home Savings, should they be required to perform on the guaranty.

However, the guaranty itself explicitly recites, "Each of the persons who has signed this Guaranty has unconditionally delivered it to the Lender...." There are other provisions in the guaranty expressing the unconditional nature of the guaranty, including the following:

The Obligations are irrevocable, absolute, present, continuing, unconditional, joint, and several (subject to the limitations set forth herein), and shall not be to any extent or in any way discharged, impaired, or otherwise affected except upon payment and performance in full of all Obligations, regardless of any circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of the undersigned.

\* \* \*

This Guaranty is in no way conditioned or contingent on Lender attempting to collect from Maker, or Lender attempting to perfect or to enforce any rights Lender has in any security for the Note or this Guaranty, or on any other condition or contingency whatsoever.

\* \* \*

The undersigned hereby waive the right to require Lender to proceed against Maker or any other person or to pursue any other remedy, [and] waive the right to have the property of Maker or any other person first applied to the discharge of the indebtedness guaranteed hereby....

Additionally, the guaranty contains the following integration clauses:

This Guaranty constitutes the entire agreement, and supersedes all prior agreements and understandings, both written and oral, between the undersigned and Lender with respect to the subject matter hereof.

* * *

This writing is intended by the parties as a final expression of this Guaranty and also is intended as a complete and exclusive statement of the terms of the agreement. No course of prior dealing between the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement or modify any term hereof, nor are there any conditions to the full effectiveness of this Guaranty.

■ "The rules of construction applicable to a guaranty are the same as applied to other contracts." *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991). Extrinsic evidence of a prior or contemporaneous agreement is generally not admissible to contradict, alter, or add to the terms of an integrated contract unless the contract is ambiguous. *Union Elec. Co. v. Fundways, Ltd.*, 886 S.W.2d 169, 170 (Mo. App.1994). An agreement is integrated if the writing represents a complete statement of the parties' bargain. *Centerre Bank of Kansas City v. Distributors*, 705 S.W.2d 42, 51 (Mo.App.1985). Parol evidence may not be used to create an ambiguity in an otherwise unambiguous document. *Union Elec. Co.*, 886 S.W.2d at 170.

■ Here, the guaranty specifically states that the guarantors' promise to pay the debt is unconditional. The guaranty does not state that it is conditioned upon Home Savings' lien on the property being a first mortgage. In fact, the guaranty allows the holder of the note to "grant forbearances, renewals, and extensions of the time for payment of the Note, and may expressly or impliedly agree to any change, substitution, withdrawal, decrease, increase, or other alteration of any collateral or property directly or indirectly securing the Note...." The guarantors' claim that the guaranty was conditioned upon Home Savings' lien being a first mortgage is in direct conflict with the unambiguous writing they signed which granted Home Savings the right to freely dispose of the collateral. The writing governs, and there is no genuine issue of material fact that the guarantors unconditionally delivered the guaranty to Home Savings.

The next element Stewart Title had to show to recover on the guaranty was that Home Savings relied on the guaranty in extending credit to WKC. The guaranty recites that it was executed on September 29, 1986. However, the guarantors dispute that the guaranty was actually signed by all of the guarantors on this date. The guarantors presented to the trial court the interrogatory answers of William Logan, C. Maxwell Logan, Heidi E. Logan, and Judith R. Logan, in which they all stated that they did not know, or could not recall, when they signed the guaranty. They also presented affidavits from these four guarantors containing the following statement:

That the guaranty in question ... was not signed by all of the guarantors contemporaneously with the closing of the loan. Specifically, the signatures of at least William Logan, Judith R. Logan, C. Maxwell Logan and Heidi Logan were not placed on the guaranty until after the closing. All of these signatures were made at the Olathe State Bank in the presence of Thomas J. Davies after the closing on the loan. Home Savings did not state upon which guaranties, if any, it was relying in extending the credit.

Additionally, the guarantors offered excerpts from the depositions of Whitney B. Wheeler and Gary L. Froistad. Mr. Wheeler was the asset manager of J.E. Robert Company Inc, which was the special loan servicer for Chemical Bank. Mr. Froistad was the Division Claims Counsel for Stewart Title. Mr. Wheeler and Mr. Froistad said that they did not know when the guarantors executed the guaranty. Thus, the guarantors contend that because four guarantors did not sign the guaranty until after the loan was closed on November 26, 1986, the guaranty was not executed contemporaneously with the promissory note, and that creates a genuine issue of material fact as to whether Home Savings

relied on the guaranties in making the loan to WKC.

The issue of whether a creditor relied on a guaranty in extending credit is essentially a question of whether the extension of credit was in consideration for execution of the guaranty. *Boatmen's First Nat. v. Roofco Systems,* 852 S.W.2d 402, 404 (Mo. App.1993). Like all other contracts, contracts of guaranty must be supported by consideration. *Coleman v. Villa Capri Restaurant,* 712 S.W.2d 65, 66 (Mo.App.1986). This consideration may be "independent of or the same as that supporting the principal contract, provided in the latter case, the guaranty is executed contemporaneously with the principal contract." *Missouri Farmers Ass'n. v. Wolfe Bros. Farm,* 681 S.W.2d 15, 19 (Mo.App.1984). If the guaranty and the principal contract are executed at the same time, the two contracts are viewed as integrated, and the consideration that supports the principal contract also supports the guaranty. *Coleman,* 712 S.W.2d at 66.

In this case, the guaranty itself recites consideration. The guaranty begins as follows:

> FOR VALUE RECEIVED, each of the undersigned unconditionally, irrevocably, jointly, and severally guarantees the due and punctual payment of all principal, interest, and all other charges due under that certain Promissory Note dated September 29, 1986, in the face amount of Seven Hundred Twenty Thousand Dollars ($720,000.00) executed by WKC RESTAURANTS VENTURE COMPANY, a Missouri general partnership ("Maker"), payable to HOME SAVINGS ASSOCIATION OF KANSAS CITY, F.A. . . . .

The recitation "for value received" is prima facie evidence of sufficient consideration to support a guaranty. *Gover v. Empire Bank,* 574 S.W.2d 464, 468 (Mo.App.1978).

Moreover, even if four of the guarantors did not sign the guaranty until after the loan was closed, the guaranty would still be valid and enforceable. "Missouri courts enforce guaranties executed after a loan is made, as long as it is part of the underlying loan transaction." *Hammons v. Ehney,* 924

S.W.2d 843, 851 (Mo. banc 1996). There was substantial evidence that the guaranty in this case was part of the underlying loan transaction, and that Home Savings relied on the guaranty in extending the credit. In its supplemental reply suggestions in support of its motion for summary judgment, Stewart Title presented the affidavit of Larry Bowman, a vice president of Home Savings at the time of the loan. In his affidavit, Mr. Bowman attested that the Board of Directors had approved the loan subject to a number of terms and conditions, one of which was that each partner in WKC would guarantee the loan up to 133% of that partner's interest in WKC. Attached to Mr. Bowman's affidavit was a copy of the Loan Committee Submission Report on the WKC loan, dated July 23, 1986, which listed the guarantors and the amount of their required guaranty. Also attached to Mr. Bowman's affidavit was Home Savings' loan commitment letter dated September 2, 1986, and addressed to WKC. The commitment letter specifically listed the execution of the guaranty as a condition of Home Savings making the loan.

The guarantors cite two cases, *Bethany Trust Co. v. Harker,* 780 S.W.2d 151 (Mo. App.1989), and *Tri–State Lumber & Shingle Co. v. Proctor,* 233 Mo.App. 1207, 128 S.W.2d 1116 (1939), for the proposition that when a guaranty is not executed contemporaneously with the promissory note, a fact issue exists as to whether the creditor relied on the guaranty in making a loan. Both are distinguishable from the present case. In *Bethany,* the promissory note was signed and delivered ten years after the guarantor had executed and delivered the guaranty. 780 S.W.2d at 151–52. Unlike the guaranty in this case, the guaranty in *Bethany* did not recite any consideration. *Id.* at 153.

In *Tri–State Lumber,* a lender sold a preexisting note to a new holder. 128 S.W.2d at 1117. After the debtor defaulted on the note, the new holder attempted to collect from the guarantor, a stockholder in the company that sold the note. The guarantor defended the claim on the ground that the guaranty was not supported by consideration. *Id.* 128 S.W.2d at 1118. There was conflicting evidence presented at trial as to

whether the guarantor executed the guaranty before or after delivering the note to the new holder, and whether the guarantor knew, prior to or at the time of delivery of the note, that he was required to execute the guaranty. *Id.* 128 S.W.2d at 1118–20. After the trial court directed a verdict in favor of the new holder, it sustained the guarantor's motion for a new trial. *Id.* 128 S.W.2d at 1117. The appellate court affirmed the grant of a new trial. *Id.* 128 S.W.2d at 1122. The court found that the conflict in the evidence created a fact issue for the jury, as the jury would not have been required to find as a matter of law that the guarantor knew of the guaranty requirement prior to or at the time of his delivery of the note to the new holder. *Id.* 128 S.W.2d at 1121–22. The court held that if the guarantor executed the guaranty after delivery of the note, there was no consideration for the guaranty unless the guarantor knew of the guaranty requirement at that time the note was delivered. *Id.* 128 S.W.2d at 1122. Here, the guarantors do not dispute that they knew, before the loan closed, about the requirement that they execute the guaranty. There is no genuine issue of material fact that the guaranty was part of the underlying loan transaction, and was, therefore, supported by consideration.

■ The last element of an action on a guaranty that Stewart Title needed to prove was that the debtor, WKC, owed Stewart Title a sum of money that the guaranty purported to cover. Stewart Title attached a copy of the promissory note to the petition. The promissory note showed that WKC promised to pay Home Savings $720,000, with interest on the unpaid principal balance from the date of disbursement. The guaranty guaranteed that in the event of a default under the note, the guarantors would pay to Home Savings or its successors or assigns, "all principal, interest, and all other charges due under that certain Promissory Note dated September 29, 1986, in the face amount of Seven Hundred Twenty Thousand Dollars ($720,000.00)." Each guarantor's share of liability under the guaranty was based upon his partnership share in WKC, as set forth in the following excerpt from the guaranty:

Notwithstanding anything to the contrary contained herein, the liability under this Guaranty of each guarantor, together with his spouse, if any, shall always be equal to, and shall not exceed, a portion of the initial face amount of the Note equal to 133% of such guarantors interest in Maker at the time of execution of this Guaranty. For example, a ten percent (10%) partner in Maker (whether direct or indirect) at the time of execution of this Guaranty will guarantee 13.33% of all indebtedness evidenced by the initial face amount of the Note, and said guarantee will remain in full force and effect notwithstanding any principal reduction on the Note.

Beside each guarantor's signature was his percentage of interest in the WKC partnership.

Regarding the current unpaid balance, Mr. Wheeler affied that WKC made regular installment payments of principal and interest up to and including April 1, 1993. From April 2, 1993, until September 19, 1994, neither WKC nor anyone else made payments on the note. The unpaid principal balance on the note was $699,848.14, on September 19, 1994, and so long as the unpaid principal balance remained that amount, interest would continue to accrue at $203.15 per day.

The guarantors contend that a genuine issue of fact exists as to whether Stewart Title's calculation of the unpaid principal balance is correct. They argue that neither Mr. Froistad nor Mr. Wheeler knew the date of initial disbursal of funds, nor whether Home Savings, the Resolution Trust Corporation, or G.E. Capital Asset Management used the correct date in calculating the amount of each loan payment to assign to principal and interest. The guarantors also point out that neither Mr. Wheeler nor Mr. Froistad knew whether any rents had been collected by any of the holders of the note, pursuant to the assignment of rents that was executed in 1986. The guarantors allege that they would be entitled to a set-off in the amount of any rents collected.

■ The guarantors offered no affirmative evidence that the figures Stewart Title provided the court regarding the unpaid principal balance were inaccurate, nor did

the guarantors offer any evidence that any rents were collected pursuant to the assignment of rents. The guarantors' contention that the unpaid principal balance might be wrong is speculative and argumentative. A non-movant may not defeat a motion for summary judgment by raising "hypothetical doubts" about the proponent's claim or by arguing that the movant's claim lacks "unassailable certainty." *Student Loan Marketing Ass'n v. Raja*, 878 S.W.2d 830, 831 (Mo. App.1994). No genuine issue of material fact remains regarding the measure of damages the guarantors owe Stewart Title.

Having found that Stewart Title established that there was no genuine dispute as to the four elements of its claim, this court now turns to the guarantors' affirmative defenses raised in their answer. To be entitled to summary judgment on the guarantors' affirmative defenses, Stewart Title must show beyond any genuine dispute the nonexistence of a fact essential to the affirmative defense, or that the defense is legally insufficient. *ITT*, 854 S.W.2d at 383. The guarantors asserted the following five affirmative defenses in their answer: (1) Stewart Title failed to mitigate its damages; (2) if the guarantors were liable, their liability had been released and discharged because Stewart Title failed to pursue persons or entities that were or may have been jointly and severally liable; (3) Stewart Title's petition failed to state a claim upon which relief could be granted; (4) the guaranty was void because it was made in violation of the ECOA; and (5) Stewart Title was barred from recovering against the guarantors because the makers of the note have no personal liability, and the obligations of any guarantors cannot exceed the obligations of the makers.

 Pursuant to Rule 84.13(a), this court need not address the trial court's rejection of the guarantors' alleged affirmative defenses of failure to mitigate and failure to pursue parties or entities that were or may have been jointly and severally liable because the guarantors did not appeal the trial court's rejection of these asserted defenses.[3] The remaining alleged affirmative defenses fail for several reasons. First, guarantors listed these defenses as conclusory statements, and did not plead any specific facts to support each defense. Rule 55.08 mandates that "a pleading setting forth an affirmative defense *shall* contain a plain statement of the facts showing that the pleader is entitled to the defense." *Curnutt v. Scott Melvin Transport, Inc.*, 903 S.W.2d 184, 192 (Mo.App. 1995). Because the guarantors did not adequately plead these alleged affirmative defenses, they fail as a matter of law. *Id.*

 Even if the guarantors had properly pled the defenses, the defenses would not have succeeded. With regard to the affirmative defense of failure to state a claim, Stewart Title's petition sufficiently stated facts entitling it to recover on the guaranty. The petition alleged that the guarantors executed the guaranty. The guaranty, which was incorporated by reference into the petition, stated that the guarantors unconditionally delivered the guaranty to Home Savings, that the guaranty was supported by consideration, and that the guaranty covered the repayment of the $720,000 note WKC executed, gave to Home Savings, and which was in default.

Likewise, the guarantors' affirmative defense which Home Savings based on the ECOA also lacks merit. The guarantors claim that Home Savings violated the ECOA by requiring their wives to sign the guaranty, without first having made a determination of whether the guarantors would have independently qualified under Home Savings' standards of creditworthiness. They argue that the violation renders the guaranty void, and that they are entitled to recoupment.

 This affirmative defense would be available, if at all, only to guarantors Allen J. Block, James E. Grier, William Logan, Hal

---

3. The guarantors also did not brief their asserted defense of failure to state a claim upon which relief can be granted. However, the failure to state a claim is an issue of subject matter jurisdiction which questions the trial court's authority "to enter any judgment for the plaintiff." *Adkis-*

*son v. Director of Revenue*, 891 S.W.2d 131, 132 (Mo. banc 1995). As it is a question of jurisdiction, this court will sua sponte address whether Stewart Title sufficiently stated a claim for relief. *Id.*; Rule 84.13(a).

M. Danzig and C. Maxwell Logan, as they are the only living guarantors whose spouses were required to sign the guaranty. The spouses, if any, of David M. Block, co-trustee of David M. Block Trust, and Jay Friedman did not sign the guaranty. David M. Block, co-trustee of David M. Block Trust, and Jay Friedman do not have standing to assert an ECOA violation, and cannot "piggy-back" on the ECOA claims of the other guarantors. *Riggs Nat. Bank of Washington, D.C. v. Linch,* 829 F.Supp. 163, 170 (E.D.Va.1993), *aff'd,* 36 F.3d 370 (4th Cir.1994).

The ECOA prohibits a creditor from discriminating against applicants on the basis of marital status with respect to any aspect of a credit transaction. 15 U.S.C. § 1691(a)(1) (1994). Regulation B, the regulation promulgated pursuant to the ECOA, further mandates that a creditor cannot require the signature of the applicant's spouse if the applicant independently qualifies under the creditor's standards of creditworthiness. 12 C.F.R. § 202.7(d)(1) (1997). The ECOA defines the term "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b) (1994). In conjunction with the ECOA definition, Regulation B defines an applicant as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties." 12 C.F.R. 202.2(e) (1997).

Any creditor who violates the ECOA is subject to civil liability for actual damages, punitive damages not to exceed $10,000, and attorney fees and costs. 15 U.S.C. § 1691e(a),(b),(d) (1994). The applicant must bring an action under the ECOA within two years from the date of the violation. 15 U.S.C. § 1691e(f) (1994). However, the ECOA also contains a provision allowing a court of competent jurisdiction to grant equitable and declaratory relief as necessary. 15 U.S.C. § 1691e(c) (1994). Aggrieved appli-cants have used this provision in several cases to assert the ECOA violation as a counterclaim or an affirmative defense for recoupment after the two year statute of limitations has run. *Hammons,* 924 S.W.2d at 852.

■ In this case, the guarantors have asked the court to void the guaranty. Aggrieved applicants cannot use the ECOA to void the guaranty. *Id.* The "vast majority of cases considering relief available for violation of the ECOA have held that there is no authority for the proposition that a violation of the ECOA renders an instrument void." *Id.* The Missouri Supreme Court held that the statute does not contain the remedy of voiding the guaranty; "where such drastic relief is not expressly stated in the statute, it will not be implied." *Id.*

■ The guarantors have also requested relief in the form of recoupment. They claim that the remedies provided by 15 U.S.C. § 1691e(b) and (d) (1994), including actual and punitive damages, attorney fees and costs, are available to them in a recoupment action. The guarantors misunderstand the nature of recoupment. Recoupment allows a defendant to mitigate or extinguish plaintiff's damages, but "'permits of no affirmative judgment for the defendant.'" *Crewse v. Shelter Mut. Ins. Co.,* 706 S.W.2d 35, 47 (Mo.App.1985) (quoting *Edmonds v. Stratton,* 457 S.W.2d 228, 232 (Mo.App. 1970)). In an action for recoupment under the ECOA, "only violations that essentially function as a defense to all or a portion of the contract obligation are cognizable...." *Integra Bank/Pittsburgh v. Freeman,* 839 F.Supp. 326, 331 (E.D.Pa.1993). The *Integra* court described those claims that are not available to the guarantors:

[T]he set of claims cognizable by way of recoupment is a limited one that excludes many of the "actual damages" available under 15 U.S.C. § 1691e—such as humiliation, embarrassment, mental anguish and injury to credit and reputation—which are not defenses to liability on the underlying contract. Similarly, any claim defendant might make for attorney's fees under 15 U.S.C. § 1691e(d) lacks sufficient nexus

with the underlying contract to be asserted by way of recoupment.

*Id.* (footnote deleted). With regard to actual damages, the guarantors failed to plead any injury that they have suffered as a result of the alleged ECOA violation, and the record does not indicate that they have suffered an injury that they can assert as a defense to their contractual obligation under the guaranty. *Id.* The guarantors' affirmative defense for recoupment fails as a matter of law.

The guarantors' last pleaded affirmative defense is that Stewart Title is barred from recovering against them because the obligations of guarantors cannot exceed the obligations of makers, and since the makers have no personal liability, the guarantors have no personal liability. The promissory note contains the following non-recourse clause:

> This Note shall be binding upon Borrower, its partners, all partners of such partners, and all makers, guarantors, sureties, and endorsers and their successors, heirs, personal representatives, and assigns; provided, however, that the liability of Borrower, its partners, and all partners in such partners shall be limited to all of the property that constitutes security for the payment of this Note and all of the obligations of Borrower in the documents described herein and as is provided in that certain Guaranty executed contemporaneously herewith.

 The guarantors argue that this clause not only makes WKC's liability on the note non-recourse, but it makes the guarantors' liability non-recourse as well, because the guarantors were all partners in the two partnerships that comprised WKC. If the individual partners in WKC had simply taken out the loan in the partnership name, without signing the guaranty, this clause would have applied to limit their liability to their interest in the collateral. The partners would have been only partners in the partnerships that comprise WKC, the borrower. However, the guaranty the partners executed in their individual capacities was a separate obligation to perform the partnership contract. Under the Uniform Partnership Law, "[a]ny partner may enter into a separate obligation to perform a partnership contract." § 358.150.1, RSMo Supp.1997.[4] By executing the guaranty as individuals, and the promissory note as partners of WKC, the partners incurred liability in two "separate and distinct capacities." 59A Am.Jur.2d *Partnership* § 645 (1987). Thus, although they were partners in WKC, and as partners, they were liable on the note as the borrower, they obligated themselves as individuals—a separate and distinct capacity—on the guaranty. *See Metro North State Bank v. Gaskin,* 34 F.3d 589, 596 (8th Cir.1994). The language limiting the borrower's liability to the collateral securing the note does not apply to the individuals who signed the guaranty.

The guarantors' reliance on *Mobil Oil Corp. v. Days,* 618 S.W.2d 286 (Mo.App. 1981), is misplaced. In *Mobil Oil,* a jury rendered inconsistent verdicts when it found a debtor not liable on a contract, but found the guarantor liable on the guaranty covering the contract. *Id.* at 287. The appellate court found that the guarantor could not be liable if the debtor was not liable, as "[t]he liability of a guarantor does not arise in absence of a debtor's liability on the principal undertaking." *Id.* The guarantors argue that this principle applies to make their liability non-recourse, since the debtor's liability is non-recourse. *Mobil Oil* simply stands for the proposition that a guarantor cannot be liable if there is a finding of no underlying liability on the debt. *Id. Mobil Oil* does not find that a guarantor's liability is limited to non-recourse if the debtor's liability is so limited.

 Holding the guarantors personally liable on the guaranty does not impermissibly expand the guarantors' liability beyond their specific engagement, as the guarantors contend. The guarantors agreed in the guaranty that if WKC defaulted, the creditor could proceed directly against them, without first proceeding against WKC or anyone else, "or foreclosing on, selling, or otherwise dis-

---

4. Although § 358.150 was revised in 1995, 1996, and 1997, the quoted language has remained constant since the 1986 version.

posing of or collecting or applying any property, real or personal, securing the Note. . . ." The guarantors also waived the right to have the partnership property applied first to discharge the debt. The court's finding of liability is exactly that to which the guarantors agreed when they signed the guaranty. In their responses to Stewart Title's motion for partial summary judgment, the guarantors also raised for the first time their contention that the "inadequate title" and the subsequent foreclosure action by the issuer of the industrial revenue bonds constituted a material alteration of the contract and an impairment of the collateral, as the guarantors anticipated that they would obtain the collateral by subrogation if they had to perform on their guaranty. An alteration in a guaranty is material if it changes the guarantor's liability. *Royal Banks,* 819 S.W.2d at 363. This argument is based upon the fact that Home Savings' commitment letter, incorporated by reference into the guaranty, contains as a condition to Home Savings' making the loan that the loan "shall be secured by a first deed of trust of mortgage on the real property. . . ." The guarantors assert that Stewart Title's error in representing that Home Savings was getting a first mortgage on the property was a departure from the terms of the guaranty and the parties' intent. According to the guarantors, the intent of the parties was that the collateral be returned to the guarantors upon satisfaction of their obligation.

■ This argument fails for several reasons. The guaranty was not conditioned upon the loan being a first mortgage. In reference to the commitment letter, the guaranty recites only that the guarantors guaranteed that *WKC* would comply with all conditions required to be complied with by WKC in the commitment letter, not that *the holder* of the note had to comply with any conditions contained in the letter in order to enforce the guaranty. Additionally, nothing occurred after the execution of the guaranty that materially altered the contract of guaranty or impaired the collateral. From the time of its inception, the Home Savings mortgage was junior to the bond holders' lien on the property. The bond holders' foreclosure was an exercise of their senior interest in the prop-

erty, an interest which preexisted both the Home Savings mortgage and the guaranty. In any event, the following excerpt from the guaranty gives the holder of the note unlimited reign over the collateral without affecting the guarantors' liability:

Any holder of the Note may grant forbearances, renewals, and extensions of the time for payment of the Note, and may expressly or impliedly agree to any change, substitution, withdrawal, decrease, increase, or other alteration of any collateral or property directly or indirectly securing the Note, or may agree to execute any amendment or other modifications to the Note or the Listed Documents, and any holder of the Note may otherwise deal with Maker, any successor in interest of Maker, or the owner of any collateral or property directly or indirectly securing the Note, or with any endorser as it may elect, without in any way affecting or releasing the Obligations.

This language expressly waives any alleged expectation of the guarantors that the collateral would still be available to them to obtain by subrogation if they had to perform on the guaranty.

The guarantors' last point on appeal is that the trial court erred in denying their motion for leave to amend their answer to include the following two affirmative defenses: (1) that the guarantors are entitled to a set-off because they relied on the negligent misrepresentation of Stewart Title regarding the first mortgage, and (2) that the guarantors are entitled to a set-off because they are accommodation parties, and Stewart Title is not a holder in due course.

■ Rule 55.33(a) provides that a pleading may be amended once before a responsive pleading has been served, or, if no responsive pleading is permitted, at any time within 30 days after it is served. "Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 55.33(a). The trial court has discretion whether to deny a party's request for leave to amend a pleading, and the appellate court will not disturb

the decision of the trial court "unless there is a showing that the court palpably and obviously abused its discretion." *Curnutt*, 903 S.W.2d at 193. There are several factors for the trial court to consider in determining whether to grant leave to amend a pleading, including the hardship to the moving party if leave to amend is denied, the moving party's reasons for not including any new matter in its earlier pleadings, the timeliness of the application for leave to amend, whether the amendment would cure the moving party's inadequate pleading, and any injustice to the opposing party if the motion for leave to amend is granted. *Id.* However, "[a] trial court does not err when it denies a motion to amend a pleading to assert a claim that possesses no merit." *Id.* at 194.

Neither of the proposed affirmative defenses possess merit. In both proposed defenses, the guarantors assert a right to a set-off. However, the guarantors specifically waived the right to a set-off in the guaranty in the following excerpt from the guaranty: "Any amount payable by the undersigned hereunder shall not be subject to any claim of the undersigned or others, whether by way of counterclaim, set-off, reduction, or otherwise." A guarantor can waive the right to set-off in the guaranty. 38A C.J.S. *Guaranty* § 104 (1996).

Further, the guarantors' claim of negligent misrepresentation would not have succeeded, as it is missing several key elements of the defense. To prevail on a claim of negligent misrepresentation, a claimant must establish the following:

(1) the defendant supplied information in the course of its business or because of some other pecuniary interest; (2) due to the defendant's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the defendant intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) **the plaintiff *justifiably relied* on the information**; and (5) as a result of the plaintiff's reliance on the statement, the plaintiff suffered a pecuniary loss.

*Mark Twain Kansas City v. Jackson*, 912 S.W.2d 536, 538 n. 2 (Mo.App.1995). Stewart Title, in the course of its business as a title insurer, did supply false information that Home Savings was acquiring a first mortgage in the property; however, this information was provided to *Home Savings* in the *lender's* title policy. Because Stewart Title was erroneous in this representation, it was required to pay Home Savings' $720,000 claim on the lender's title policy. A lender's title policy is intended to benefit the lending institution, while an owner's policy is intended to benefit those purchasing the property. *See McKenzie v. Columbian Nat. Title Ins.*, 931 S.W.2d 843, 845 (Mo.App.1996). The issue of intent "is a legal, not factual, issue so long as parol evidence is not necessary to ascertain the parties' intent." *Id.* As was the case in *McKenzie*, parol evidence is not necessary here, because "only the owner's policy would have expressed an intent that the respondent assume a direct obligation to [WKC]." *Id.* WKC did not buy title insurance for this transaction, and there is no evidence that either WKC or the guarantors were insured under the lender's title policy.

The fact that Stewart Title did not assume a direct obligation to WKC in the lender's policy also shows that the guarantors' reliance on the representation was not justified. Further, the guarantors' actual reliance on the representation in guaranteeing the loan is questionable, considering that the guaranty was not conditioned on the note being a first mortgage, and in fact the guaranty gave the holder of the note the power to release collateral without affecting the obligations of the guarantors. The guarantors did not have a reasonable expectation that the property would still be serving as the collateral for the loan if the guarantors were called upon to honor the guaranty. It was the agreed-upon terms of the guaranty, and not the guarantors' unjustifiable reliance on Stewart Title's erroneous representation, that caused the guarantors' alleged pecuniary loss. The guarantors' affirmative defense of negligent misrepresentation would not have been successful; therefore, the court properly denied the guarantors' motion for leave to amend its answer to include this defense.

■ The guarantors' proposed affirmative defense that they were accommodation parties entitled to assert the right of set-off for impairment of the value of the collateral also lacks merit. Section 400.3–606, RSMo 1986, the statute in effect at the time the guaranty was executed, provided that a party to an instrument was discharged "to the extent that without such party's consent the holder ... unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." The Uniform Commercial Code Comment to this section explained that "[c]onsent may be given in advance, and is commonly incorporated in the instrument." In this case, the guarantors gave their consent in the guaranty when they agreed that "[a]ny holder of the Note may grant forbearances, renewals, and extensions of the time for payment of the Note, and may expressly or impliedly agree to any change, substitution, withdrawal, decrease, increase, or other alteration of any collateral or property directly or indirectly securing the Note ... without in any way affecting or releasing the Obligations."

The guarantors assert the right of set-off for impairment of the value of collateral claim under § 400.3–605, RSMo 1994. This statute became effective in 1992. Section 400.3–605(e) discharges an accommodation party from an obligation to pay an instrument to the extent that a person entitled to enforce the instrument impairs the value of the interest in the collateral securing the instrument. However, like § 400.3–606, RSMo 1986, § 400.3–605 allows a party to waive discharge. Section 400.3–605(i)(ii) provides that a party is not discharged if "the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral." Regardless of which statute is applied to the facts of this case, § 400.3–606, RSMo 1986, or § 400.3–605, RSMo 1994, the guaranty clearly waives discharge based on impairment of collateral.

Because neither of the proposed affirmative defenses would have been successful, this court finds no error in the trial court's decision to deny the guarantors leave to amend their answer to include the affirmative defenses. There are no genuine issues of material fact remaining regarding whether Stewart Title is entitled to recover on the guaranty, and the guarantors' pleaded and proposed affirmative defenses were legally insufficient. Stewart Title established a right to judgment as a matter of law. The judgments of the trial court granting Stewart Title partial summary judgment on its claim against the guarantors, and denying the guarantors' motion for leave to file an amended answer, are affirmed.

All concur.