STATE of Missouri, Respondent,

v.

Louiso V. RAMIRES, Appellant.

No. WD 62863.

Missouri Court of Appeals, Western District.

Dec. 21, 2004.

Michael Joseph Gunter, Kansas City, MO, for Appellant.

Deborah Daniels, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., LOWENSTEIN and SPINDEN, JJ.

EDWIN H. SMITH, Chief Judge.

Louiso Ramires appeals the judgment of his convictions, after a jury trial in the Circuit Court of Platte County, of one count of trafficking in the second degree, § 195.223,[1] and one count of unlawful use of a weapon, § 571.030. As a result of his convictions, the appellant was sentenced to consecutive terms in the Missouri Department of Corrections of fifteen years for trafficking and three years for unlawful use of a weapon, and fined $300 on the conviction for unlawful use of a weapon.

The appellant raises two points on appeal. In Point I, he challenges his drug conviction, and in Point II, he challenges his conviction for unlawful use of a weapon. In Point I, he claims that the trial court erred in overruling his pre-trial motion to suppress and in admitting at trial, over his objection, the methamphetamine seized from the vehicle he was driving when he was arrested for driving without a valid driver's license because the seizure was illegal under the Fourth Amendment of the U.S. Constitution. In Point II, he claims that the trial court erred in overruling his motion for judgment of acquittal, at the close of all the evidence, on the charge of unlawful use of a weapon, because the State failed to prove, as required by due process, each and every element of the offense beyond a reasonable doubt, in that it failed to prove that the handgun with which he was charged as possessing was functional.

We affirm the appellant's conviction for unlawful use of a weapon, and reverse and remand his conviction for trafficking.

## Facts

At approximately 2:00 a.m. on August 13, 2002, Officer Brian Bradley of the Parkville, Missouri Police Department, while on patrol in the area of East Street and Fourth Street, noticed that a vehicle backing out of a driveway was missing a front license plate and had a cracked taillight. He stopped the vehicle and asked the driver, who turned out to be the appellant, for his driver's license and proof of insurance. The appellant produced only a Mexican identification card, and, when asked whether he had a driver's license, replied that he did not.

Officer Bradley placed the appellant under arrest for driving without a valid driver's license, handcuffed him, and conducted a search of his person. Officer Bradley found $6,000 in cash in the appellant's pants pocket, consisting of $20, $50, and $100 bills. After placing the appellant in his patrol car, Officer Bradley searched the interior of the appellant's vehicle around the driver's seat. During the search, he found, underneath the seat, a

1. All statutory references are to RSMo 2000, unless otherwise indicated.

silver .32 caliber Beretta handgun, which he seized.

At some point, Officer Bradley radioed for backup. At about the same time he found the handgun, Officers David Winship and Eric Sligar arrived at the scene to provide backup. Officer Bradley decided to have the vehicle that the appellant was driving towed and impounded, which required the completion of a "Missouri Department of Revenue Authorization to Tow Form," which called for an inventory search of the vehicle prior to its being released to the tow company. Officer Bradley called a tow company and then transported the appellant to the police station in his patrol car, while Officers Winship and Sligar stayed at the scene to conduct the required inventory search of the vehicle. During the search, an opaque white plastic bag containing the methamphetamine was found and seized.

On October 10, 2002, the appellant was charged, by information, in the Circuit Court of Platte County with one count of trafficking in the second degree and one count of unlawful use of a weapon. On January 16, 2003, the appellant filed, pursuant to Rule 24.05,[2] Rule 34.01, and § 542.296, a motion to suppress the methamphetamine and handgun, alleging that they were seized in violation of the Fourth Amendment. The motion was heard on January 22, 2003 and overruled.

Officer Bradley testified at the appellant's suppression hearing on behalf of the State, explaining why he had the vehicle towed and impounded following the seizure of the handgun and the arrest of the appellant, and describing the inventory search conducted of the vehicle:

A. My next step with the defendant, after I found the handgun, I ordered a Good Times Company tow company [sic] to the scene to tow the vehicle.

Q. And why would you do that?

A. Because of the defendant had no driver's license and was unable to produce any paperwork for the vehicle that showed it was his, and finding the loaded handgun and the large amount of cash, I just felt better towing the vehicle and impounding it.

Q. And there's nobody else to take possession of the car, at that point; is that correct?

A. That's correct.

Q. Okay. And at this point, do you have procedures that you follow through Parkville, as far as when you're gonna impound a vehicle?

A. Through the city and through the State, yes, sir.

Q. Okay. And are you familiar with those policies and procedures?

A. Yes, sir.

Q. Okay. And what are your normal steps that you have to take, when you make the decision to impound a vehicle?

A. The State of Missouri has a Department of Revenue Authorization to Tow Form, which requires a detailed inventory search of the vehicle, prior to being towed.

Q. And why is that inventory of the vehicle done?

A. To inventory any contents, damaged, or missing parts of the vehicle, prior to it being released to the tow company.

2. All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.

Q. And to your knowledge, was that inventory search done?

A. Yes, sir, it was.

Q. Okay, and who was it conducted by?

A. It was conducted by Officer Sligar conducted the inventory search and Officer Winship filled out the form while Officer Sligar conducted the search.

Officer Sligar also testified at the suppression hearing on behalf of the State. He testified that he conducted the inventory search, which he described as "a search of the vehicle for all of its contents to discover any valuable items and log every item that we find in the vehicle on the tow sheet, as protection for liability for the department." He testified that he began the inventory search "near the driver's seat in the driver's immediate reach area," including looking underneath the dashboard by kneeling on one knee. While looking in that area, he noticed that the dashboard around the steering wheel did not have a cover, partially exposing a white plastic bag, which fell to the floorboard when it pushed on it. He testified that although he could not see what was inside the bag, he opened it up and found another plastic bag, which was blue and was semi-transparent. He could see, without opening it, that it contained a grainy material, which he believed was methamphetamine. He then opened the blue plastic bag and found what was later determined to be 612.9 grams, or 1.35 pounds, of methamphetamine.

The appellant was tried in a two-day jury trial on March 3–4, 2003. During the trial, the appellant objected to the admission of the methamphetamine and the handgun, claiming that they were obtained through an illegal search. The appellant's objections were overruled, and the evidence was admitted.

The jury returned verdicts finding the appellant guilty of trafficking in the second degree and unlawful use of a weapon. On May 15, 2003, he was sentenced to consecutive terms in the Missouri Department of Corrections of fifteen years for trafficking, and three years for unlawful use of a weapon. In addition, he was fined $300 on his conviction for unlawful use of a weapon.

This appeal followed.

## I.

In Point I, the appellant challenges his conviction for trafficking in methamphetamine. He claims that the trial court erred in overruling his pre-trial motion to suppress and in admitting at trial, over his objection, the methamphetamine seized from the vehicle he was driving when he was arrested for driving without a valid driver's license because the seizure was illegal under the Fourth Amendment of the U.S. Constitution. He claims that the seizure of the methamphetamine, which was found in a white plastic bag tucked up under the dashboard, violated the Fourth Amendment and was unlawful in that the opening of the bag, which was considered a closed container, revealing the methamphetamine, was not permitted as part of a valid inventory search of the vehicle and its contents, under the Fourth Amendment exception relied upon by the State for the seizure. Specifically, the appellant claims that the opening of the white plastic bag violated the Fourth Amendment in that there was no showing, as required, that the Parkville Police Department had adopted specific procedures for opening closed containers found during an inventory search.

Appellate review of the denial of a motion to suppress is limited to a determination of whether there is substantial evidence to support the ruling. *State v.*

*Rousan,* 961 S.W.2d 831, 845 (Mo. *banc* 1998). In making this determination, this court reviews both the record of the suppression hearing and the trial. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. *banc* 1999). This court views the evidence and any reasonable inferences in the light most favorable to the trial court's ruling. *State v. Carter,* 955 S.W.2d 548, 560 (Mo. *banc* 1997). This court defers to the trial court's determination as to the credibility of witnesses. *Rousan,* 961 S.W.2d at 845. The ultimate issue of whether the Fourth Amendment was violated is a question of law, however, which this court reviews *de novo. State v. Kimberley,* 103 S.W.3d 850, 856 (Mo.App.2003).

 The Fourth Amendment to the U.S. Constitution, enforceable against the states through the due process clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures. *Deck,* 994 S.W.2d at 534. This same right is guaranteed by article I, section 15 of the Missouri Constitution. *Id.* Pursuant to these constitutional guarantees, warrantless searches and seizures are deemed *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Taber,* 73 S.W.3d 699, 704 (Mo.App.2002). One such exception is an inventory search of a motor vehicle, which permits a law enforcement officer to make a warrantless search of a lawfully seized vehicle, provided that it is conducted according to standardized criteria or an established routine adopted by the law enforcement agency conducting the search. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990); *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *State v. Jones,* 865 S.W.2d 658, 660 (Mo. *banc* 1993); *State v. Hoyt,* 75 S.W.3d 879, 883 (Mo.App. 2002). In that regard, the appellant claims that the purported inventory search of the vehicle by the Parkville police officers at the scene of the arrest, that resulted in the seizure of the methamphetamine, was illegal in that it was not conducted according to standardized criteria or established routine adopted by the Parkville Police Department, such that it violated his constitutional protection against unreasonable searches and seizures.

Inasmuch as we are to affirm the trial court's denial of the appellant's motion to suppress on any ground supported by the record, *State v. Wells,* 33 S.W.3d 202, 205 (Mo.App.2000), before we address whether the seizure of the methamphetamine was illegal, as the appellant contends, we first have to address the State's contention that the trial court did not err in denying the appellant's motion because he failed to show at the suppression hearing, as required, that he had "standing" to challenge the legality of the seizure. The State did not contest this issue at the suppression hearing, contending that it can raise it for the first time on appeal. The appellant does not address the issue of standing on appeal.

## A. Fourth Amendment Standing

Rule 34.01 provides that the "provisions of Chapter 542, RSMo, shall govern procedure in searches and seizures." Section 542.296.1 authorizes a "person aggrieved by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure" to file a motion to suppress the evidence of the property or matter seized. And, although Rule 41 of the Federal Rules of Criminal Procedure, did contain, but no longer contains, this "aggrieved" language as to motions to suppress, 3A CHARLES ALAN WRIGHT, Nancy J. King & Susan R. Klein, FEDERAL PRACTICE AND PROCEDURE

§ 672 n. 1, at 370 (3d. ed.2004) states: "The phrase [concerning being aggrieved by a search and seizure] does not appear in new Rule 41(h), which now speaks to motions to suppress, but it has not been doubted that the concept is still applicable to a Rule 41(h) motion." *See State v. Nichols*, 628 S.W.2d 732, 736 (Mo.App. 1982) (referencing the "aggrieved" language of what was then Rule 41(e) of the Federal Rules of Criminal Procedure, stating: "Rule 41 conforms to the general standard and is no broader than the constitutional rule") (citations omitted).

Section 542.296.1 does not specify who is considered a person aggrieved by a search and seizure to allow the filing of a motion to suppress evidence from an alleged illegal search and seizure. However, as we discuss, *infra*, the case law, both federal and state, would clearly indicate that to be an aggrieved person so as to have "standing" to file a motion to suppress, challenging the legality of a search, the defendant has to have a legitimate expectation of privacy in the property or thing searched.

■ In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978), the U.S. Supreme Court addressed the issue of "standing" to assert a Fourth Amendment violation and seek the protections of the exclusionary rule. The exclusionary rule "is a judicially imposed sanction to safeguard a person's Fourth Amendment right to be free from unreasonable searches and seizures." *State v. Dowell*, 25 S.W.3d 594, 604 (Mo.App.2000). In *Rakas*, the petitioners sought to have the Court interpret language in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) as supporting the so-called "target" theory for standing that they were advancing, "which would in effect permit a defendant to assert that a violation of the Fourth Amendment rights of a third party entitled him to have evidence suppressed at his trial." *Rakas*, 439 U.S. at 133, 99 S.Ct. 421. In support of the target theory, the petitioners quoted from *Jones*, 362 U.S. at 261, 80 S.Ct. 725:

> In order to qualify as a person *aggrieved by an unlawful search and seizure* one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of search or seizure directed at someone else.

*Rakas*, 439 U.S. at 134–35, 99 S.Ct. 421 (emphasis added).

The *Rakas* Court rejected the "target" theory of standing and held that, because a person's Fourth Amendment rights are personal constitutional rights that cannot be vicariously asserted and are not violated by an illegal search and seizure of a third person's premises or property, and because the "exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit *only* defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Rakas*, 439 U.S. at 134, 99 S.Ct. 421 (citations omitted) (emphasis added). In so holding, the Court "reaffirmed the principle that the rights assured by the Fourth Amendment are personal rights which may be enforced by exclusion of evidence only at the instance of the one whose own protection was infringed by the search and seizure." *Id.* at 138, 99 S.Ct. 421 (citations omitted).

Having rejected the "target" theory for standing to challenge a search and seizure under the Fourth Amendment, the Court then turned to the question of what standard to use in determining whether a defendant has a Fourth Amendment right of protection with respect to the place or thing searched such that he could file a motion to suppress, seeking to exclude, at

trial, the evidence seized. In that regard, the Court held that whether a challenged search or seizure violates the Fourth Amendment rights of a defendant seeking to invoke the exclusionary rule turns on a "determination of whether the disputed search and seizure has infringed an *interest* of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140, 99 S.Ct. 421 (emphasis added). As to that interest, the *Rakas* Court discussed the rule in *Jones* that a Fourth Amendment right of protection existed where the defendant was "legitimately on premises." *Id.* at 142, 99 S.Ct. 421 (*citing Jones,* 362 U.S. at 264, 80 S.Ct. 725). The Court rejected this standard as being "too broad a gauge for measurement of Fourth Amendment rights." *Id.* Instead, the Court adopted, as the proper measure of a defendant's interest sufficient to invoke Fourth Amendment protection, as a "legitimate expectation of privacy" in the place or thing being searched. *Id.* at 143, 99 S.Ct. 421.

In *Jones,* the Court not only held that Fourth Amendment standing could be established by the defendant's being "legitimately on the premises;" but held that there was "automatic" standing "where the same possession needed to establish standing is an essential element of the offense charged." *Id.* at 135, 99 S.Ct. 421. While standing based upon the defendant's being "legitimately on the premises" was rejected in *Rakas,* the "automatic" standing rule was subsequently rejected in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). In rejecting the "automatic" standing rule, the Court, in *Salvucci* noted that in *Jones,* it had advanced two reasons for the rule: (1) that without the rule, in carrying his burden of proof as to standing, by testifying he possessed the items in question, the defendant would be conceding a proof element of the crime charged; and, (2) that any other rule would result in prosecutorial self-contradiction in that the government, in proving criminal liability, would be asserting that the defendant possessed the items, but with respect to Fourth Amendment standing, would be asserting the exact opposite. *Salvucci,* 448 U.S. at 87–88, 100 S.Ct. 2547 (*citing Jones,* 362 U.S. at 261–64, 80 S.Ct. 725). The Court concluded that the first reason was no longer valid in that, in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court had held that a defendant's testimony at a suppression hearing could not be used against him at trial. *Salvucci,* 448 U.S. at 89–90, 100 S.Ct. 2547. As to the second *Jones* reason for the "automatic" standing rule, the Court held that it was no longer valid in that it was based on an assumption that was incorrect in light of *Rakas,* the assumption being that a defendant's possession of a seized item, sufficient to establish guilt, was also sufficient to establish Fourth Amendment standing. *Id.*

Reading *Rakas* and *Salvucci* together, it is clear that, according to federal law, only one basis remains for establishing standing to file a motion to suppress evidence with respect to the Fourth Amendment, that basis being the legitimate expectation of privacy in the place or thing searched. In other words, in order for a defendant to be aggrieved by an unlawful search and seizure sufficient to allow his filing of a motion to suppress under the Fourth Amendment, seeking to invoke the exclusionary rule, there has to be a showing that he has a legitimate expectation of privacy in the place or thing searched.

■ In *State v. McCrary,* 621 S.W.2d 266, 272 (Mo. *banc* 1981), the Missouri Supreme Court recognized the U.S. Su-

preme Court's holding in *Rakas*, that "before one can complain of the violation of the fourth amendment, ... one has to have a legitimate expectation of privacy in the place or thing searched." The *McCrary* Court also recognized that the "reasonable expectation" test for "standing" under Art. I, § 15, adopted by it in *J.R.M.*, 487 S.W.2d 502, 508 (Mo. *banc* 1972), was identical to the "legitimate expectation of privacy" test adopted by the Court in *Rakas*. *State v. McCrary*, 621 S.W.2d at 273. Thus, the *McCrary* Court concluded that "in order for [a defendant's] rights to have been violated or for [him] to have *standing* to assert a violation of Mo. Const. Art. I, § 15, [he] must have had a legitimate expectation of privacy in the place or thing searched." *Id.* (emphasis added); *see also State v. Simmons*, 955 S.W.2d 752, 761 (Mo. *banc* 1997); *State v. Wise*, 879 S.W.2d 494, 503–04 (Mo. *banc* 1994); *State v. Clark*, 136 S.W.3d 582, 586 (Mo.App.2004); *State v. Mosby*, 94 S.W.3d 410, 415 (Mo. App.2003); *State v. Toolen*, 945 S.W.2d 629, 631 (Mo.App.1997). In other words, to challenge the legality of a search and seizure in this state under the Fourth Amendment and/or Art. I, § 15, the defendant must be "aggrieved" by the search and seizure in that he has a legitimate expectation of privacy in the place or thing searched. Thus, we interpret the language in § 542.296.1, that "[a] person *aggrieved* by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a

motion to suppress the use in evidence of the property or matter seized," as a codification of the "standing" requirement set forth in *Rakas, Salvucci, Rawlings,* and *McCrary,* which is satisfied by showing that the defendant has a legitimate expectation of privacy in the place or thing searched. *See State v. Clark*, 136 S.W.3d at 586; *State v. Toolen*, 945 S.W.2d at 631; *State v. Childress*, 828 S.W.2d 935, 939 (Mo.App.1992); *State v. Nichols*, 628 S.W.2d 732, 736–38 (Mo.App.1982) (discussing Fourth Amendment standing in terms of being "aggrieved" by the search and seizure).

■ Having concluded that being "aggrieved" by the search and seizure, as provided in § 542.296.1, equates to Fourth Amendment standing,[3] the question becomes whether the defendant or the State has the burden of proof with respect to that issue. This question arises in that the State is claiming, here, that the trial court was correct in denying the appellant's motion to suppress because he did not show that he had standing to file the motion, asserting that the burden to establish standing was on the appellant.

■ Section 542.296.1 does not expressly state whether the defendant or the State has the burden of proof as to standing. However, § 542.296.6 does provide that:

> The judge shall receive evidence on any issue of fact necessary to the decision of the motion. The *burden of going for-*

---

3. Although the Missouri Supreme Court in *McCrary* used the term "standing" to describe a defendant's right to contest the legality of a search and seizure, 621 S.W.2d at 273, the United States Supreme Court in *Rakas* held that this determination "belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of *standing.*" *Rakas*, 439 U.S. at 140, 99 S.Ct. 421. (Emphasis added). Nonetheless,

our courts, including the Missouri Supreme Court, in *State v. Lane*, 937 S.W.2d 721, 722 (Mo. *banc* 1997), and the U.S. Supreme Court in *United States v. Payner*, 447 U.S. 727, 731–732, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980), have continued to use "standing" as a shorthand reference in describing whether a defendant is "aggrieved" by the challenged search or seizure.

*ward with the evidence and the risk of nonpersuasion* shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled.

(Emphasis added.) The language of the statute, "burden of going forward with the evidence and the risk of nonpersuasion," references the two recognized components of the burden of proof: "the burden of producing (or going forward with) evidence and the burden of persuasion." *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 53 (Mo. *banc* 2001). The burden of going forward with the evidence is defined as "a party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling such as a summary judgment or a directed verdict." *Id.* at n. 6 (*quoting* BLACK'S LAW DICTIONARY 190 (7th ed.1999)). The burden of persuasion is defined as "a party's duty to convince the fact-finder to view the facts in a way that favors that party." *Id.* In referencing both components of the burden of proof, there can be no doubt that § 542.296.6 dictates that the State has the burden of proof to show by a preponderance of the evidence that the motion to suppress should be overruled. However, appellate decisions of this state, including the decisions of the Missouri Supreme Court, which were decided after the enactment of § 542.296.6 in 1974, clearly indicate that, as to a motion to suppress, the defendant has the initial burden of showing that he is aggrieved by the search and seizure or, in other words, has standing to challenge the search and seizure, under the Fourth Amendment, by showing that he has a legitimate expectation of privacy in the place or thing searched.

In *State v. McCrary*, the Missouri Supreme Court recognized that this state follows the rule that the defendant has the "burden of establishing that his *own*

Fourth Amendment rights were violated by the challenged search and seizure." 621 S.W.2d at 273 (*citing State v. Hornbeck*, 492 S.W.2d 802, 808 (Mo.1973) and (*quoting Rakas*, 439 U.S. at 131 n. 1, 99 S.Ct. 421) (emphasis added)). As the court in *State v. Baker*, 632 S.W.2d 52, 53 (Mo.App.1982) stated:

> Though it is the state's burden at [the motion to suppress] hearing to show by a preponderance of the evidence that the motion to suppress should be overruled, § 542.296.6, RSMo.1978, it is the defendant's burden to establish 'standing' to challenge the search and seizure by showing his *own* Fourth Amendment rights were violated.

In other words, although the State, in accordance with § 542.296.6, has the burden of production and persuasion to show by a preponderance of the evidence that the defendant's motion to suppress should be overruled, the defendant, in accordance with § 542.296.1, has the initial burden of proving that he is aggrieved by the search and seizure, or stated another way, that he has Fourth Amendment standing to challenge the search and seizure by showing that he has a legitimate expectation of privacy in the place or thing searched. *State v. Simmons*, 955 S.W.2d at 761; *State v. Clark*, 136 S.W.3d at 587; *State v. Mosby*, 94 S.W.3d at 416; *State v. Mitchell*, 20 S.W.3d 546, 557 (Mo.App.2000); *State v. Toolen*, 945 S.W.2d at 631; *State v. Martin*, 892 S.W.2d 348, 351 (Mo.App. 1995); *State v. Thompson*, 820 S.W.2d 591, 593–94 (Mo.App.1991); *State v. Baker*, 632 S.W.2d at 53.

At least one legal commentator has questioned the freedom of the individual states to allocate the burden of proof in Fourth Amendment suppression hearings, specifically allocating any burden to the defendant, stating:

It appears clear that the Supreme Court has held, albeit without any extended discussion of the issue, that the burden of proof *must* be on the prosecution when it is claimed that the evidence was obtained in a search by consent, and thus it cannot be said that the allocation of the burden as to Fourth Amendment claims is merely a matter of state procedure untouched the Constitution. However, the Court has not spoken in such direct terms about allocation of the burden in other situations.

5 WAYNE LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.2(b), at 56 (3d ed.1996). In that regard, as we interpret § 542.296, Missouri places the burden on the prosecution as to all Fourth Amendment claims with respect to motions to suppress, whether a warrant was issued or not, except the burden to prove standing, which is on the defendant. Missouri's placing of the burden on the defendant to prove Fourth Amendment standing has never been challenged as being unconstitutional, and, in fact, is consistent with federal case law on the issue, as we discuss, *supra.*

In holding as we do, that despite § 542.296.6, the defendant has the initial burden to show Fourth Amendment standing to file a motion to suppress, we are aware of two decisions of the Southern District of this court holding to the contrary: *State v. Tipton,* 796 S.W.2d 109, 111–12 (Mo.App.1990); and, *State v. Childress,* 828 S.W.2d at 942–43, relying on *Tipton.* In *Tipton,* the Southern District, relying on *State v. Milliorn,* 794 S.W.2d 181, 184–85 (Mo. *banc* 1990), concluded that § 542.296.6 placed the burden on the

State to prove that the defendant had no Fourth Amendment standing. *State v. Tipton,* 796 S.W.2d at 111–12. And, the court in *Childress,* although recognizing an abundance of both federal and state authority to the contrary, ruled in accordance with *Tipton. State v. Childress,* 828 S.W.2d at 942–43. Both the *Tipton* and *Childress* courts' reliance on *Milliorn* is misplaced.

The Court in *Milliorn,* in rejecting the State's argument that *State v. Yowell,* 513 S.W.2d 397, 402 (Mo. *banc* 1974), was controlling, which held that the defendant had the burden of producing probative evidence in support of his motion to suppress, pointed out that *Yowell* was decided prior to the enactment of § 542.296.6. *State v. Milliorn,* 794 S.W.2d at 184. In finding that the burden of proof holding of *Yowell* was overruled by the enactment of § 542.296.6, the Court was not addressing the burden of proof as to Fourth Amendment standing.[4] *State v. Milliorn,* 794 S.W.2d at 184. Rather, it was addressing the burden of proof as to whether the defendant's motion to suppress should be overruled on the merits. *Id.* Thus, the Southern District's reliance on *Milliorn* in *Tipton* and *Childress,* placing the burden of proving the lack of Fourth Amendment standing on the state, was erroneous. This fact is made crystal clear by the Missouri Supreme Court's post-*Childress* decision in *State v. Simmons,* 955 S.W.2d at 761, placing the burden of proving Fourth Amendment standing squarely on the defendant. Hence, *Childress* and *Tipton* were wrong from the beginning and should never have been followed. Moreover, we would note that the Southern District recently, in *State v. Clark,* 136

---

**4.** As Judge Hogan pointed out in his dissent in *Tipton:* "I do not believe *State v. Milliorn,* 794 S.W.2d 181 (Mo.banc 1990), was intended to relieve the defendant of his burden to show that he was 'a person aggrieved by an unlawful seizure' with the meaning of § 542.296.1." 796 S.W.2d at 112.

S.W.3d at 586, without any mention of *Childress,* ruled consistently with the holding in *Simmons,* citing *State v. Toolen,* 945 S.W.2d at 631. In any event, inasmuch as we are bound by the most recent pronouncements of our state Supreme Court, *State v. Williams,* 9 S.W.3d 3, 12 (Mo.App. 1999), we are bound by the Court's holding in *Simmons,* that the burden to prove Fourth Amendment standing is on the defendant. 955 S.W.2d at 761.

Having established that the appellant had the burden at the suppression hearing to show that he had a reasonable and legitimate expectation of privacy in the methamphetamine that was seized, the State contends that he failed to carry that burden, justifying the trial court's denial of his motion to suppress. As noted, *supra,* the State did not raise the issue of Fourth Amendment standing at the suppression hearing or at trial, but raises it for the first time on appeal. As discussed, *infra,* this fact does not preclude us from considering the State's contention that the appellant failed to carry his burden of proving Fourth Amendment standing, which justified the trial court's denial of his motion to suppress.

 On appeal, the appellant, not the respondent, has the "burden of showing erroneous action on the part of the trial court." *State v. Hensley,* 770 S.W.2d 730, 731 (Mo.App.1989). To preserve an issue for appellate review, the *appellant* is required to raise that issue with the trial court below to give it an opportunity to take remedial action. *State v. Brown,* 953 S.W.2d 133, 139 (Mo.App.1997); *State v. Gray,* 926 S.W.2d 29, 33 (Mo.App.1996). In other words, an appellant cannot raise an issue for the first time on appeal. *Gray,* 926 S.W.2d at 33.

Here, the State is the respondent, not the appellant. As such, it was not required to preserve any issue for appeal by raising it below with the trial court, including the issue of whether the appellant had Fourth Amendment standing to file his motion to suppress. *See United States v. Miller,* 636 F.2d 850, 854 (1st Cir.1980) (holding that the State, as the respondent, could raise the issue of the defendant/appellant's Fourth Amendment standing for the first time on appeal in that, because it was the defendant's burden at the suppression hearing to prove that he had Fourth Amendment standing, the "failure to raise that standing issue was his failure, not the government's," such that he could not be heard to complain). Had the State been the appellant in our case, then, regardless of the fact that the defendant below had the burden of proof as to Fourth Amendment standing at the suppression hearing, the State would have been obligated to raise the issue below in order to preserve it for an interlocutory appeal, under § 547.200. *See State v. Grundy,* 25 Wash.App. 411, 607 P.2d 1235, 1237 (1980) (holding that the State, as the appellant, was obligated to challenge the defendant's Fourth Amendment standing at trial, regardless of the burden of proof thereon). Of course, if the State stipulates or affirmatively waives standing, then, even as the *respondent* on appeal, it could not raise the issue. *Steagald v. United States,* 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981); *State v. Childress,* 828 S.W.2d at 940. That did not occur here.

 In light of the foregoing discussion, to have Fourth Amendment standing to challenge the seizure of the methamphetamine, in accordance with § 542.296.1, the appellant had the initial burden of showing, by a preponderance of the evidence, that he had a legitimate expectation of privacy in the white plastic bag containing the methamphetamine, which was found in the vehicle during the

purported inventory search conducted by the Parkville Police Officers at the scene of the appellant's arrest. A two-part test exists for determining whether a defendant has a legitimate expectation of privacy in the place or thing searched:

> First, the defendant must have an actual, subjective expectation of privacy in the place or thing searched. Second, the expectation of privacy must be reasonable or legitimate. The legitimacy or reasonableness of the expectation is measured by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

*State v. McCrary*, 621 S.W.2d at 272–73 (citations omitted).

In its brief, the State contends that the appellant did not have Fourth Amendment standing to challenge the inventory search of the vehicle "because [he] did not own the car and [he] failed to demonstrate that he had permission to drive the vehicle." In so contending, the State overlooks the fact that the appellant is not complaining on appeal about the legality of the inventory search of the vehicle insofar as it led to the discovery of the white plastic bag containing the methamphetamine. Rather, he is complaining about the opening of the bag once it was found during the inventory search, claiming that the Parkville police officers were not authorized to open closed containers found during an inventory search without there being shown a specified policy authorizing the same, which he contends there was not. Hence, in that respect, the question of standing in this case would concern the appellant's privacy interest in the white plastic bag containing the methamphetamine, not the vehicle itself. In other words, the proper question concerning standing in this case is whether the record demonstrates that the appellant had a legitimate expectation of privacy in the white plastic bag containing the methamphetamine.

In determining whether the record supports a finding of Fourth Amendment standing with respect to the white plastic bag found during the inventory search of the vehicle the appellant was driving, we may consider the record of the suppression hearing and trial. *State v. Clark*, 136 S.W.3d at 586. The record on appeal reflects that the appellant did not specifically claim standing as to the white plastic bag at the suppression hearing or at trial, nor was the issue raised by the State. At the suppression hearing, the appellant did not testify. The only witnesses at the hearing were the State's: Officer Bradley, who made the traffic stop of the appellant; and, Officer Sligar, who conducted the inventory search of the vehicle with Officer Winship, and found the white plastic bag. They did not testify as to any statements made by the appellant at the scene that the white plastic bag was not his.

On, appeal, the appellant did not favor us with a complete transcript of the trial. Rather, for some unexplained reason, he chose only to provide the transcript of the State's case. As to the State's case, there is nothing in the record that the appellant made any statements at the scene that the white plastic bag containing the methamphetamine that was seized was not his. Consequently, there is nothing in the record on appeal that would suggest that *prior to trial* the appellant was disavowing any interest in the white plastic bag such that he would lack Fourth Amendment standing as to the bag. *See State v. Toolen*, 945 S.W.2d at 630, 632 (holding that a pre-trial showing that the defendant disclaimed ownership of the property in question prevented that defendant from asserting an expectation of privacy therein).

█ Although we did not conduct an exhaustive search, we found cases of our

appellate courts that hold that the denial by the defendant, *at trial*, that the container in which the contraband was found was not his was sufficient to show a lack of Fourth Amendment standing. *State v. Clark*, 136 S.W.3d at 586; *State v. Stillman*, 938 S.W.2d at 291. We believe those cases are in error. Those cases fail to consider the well-established rule that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States*, 390 U.S. at 394, 88 S.Ct. 967. In other words, a defendant is allowed to make contrary claims as to an interest in the place or thing searched for purposes of the Fourth and Fifth Amendments, just like the government. Without the rule of *Simmons*, the defendant would be forced:

> either to give up what he believed . . . to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

*Id.* In addition, without the rule, the U.S. Supreme Court commented that the "Government would be allowed the advantage of contradictory positions" at the suppression hearing and trial. *United States v. Salvucci*, 448 U.S. at 88, 100 S.Ct. 2547. In not allowing the government to take contradictory positions:

> The Court reasoned that the Government ought not to be allowed to assert that the defendant possessed the goods for purposes of criminal liability, while simultaneously asserting that he did not possess them for the purposes of claiming the protections of the Fourth Amendment. . . . It is not consonant

with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government. *Id.* (citations omitted).

Common sense and logic dictates that the rule of *Simmons* should work in both directions. In other words, just like the State should not be allowed to use the defendant's testimony at the suppression hearing against him at trial to prove guilt, it should not be allowed, on appeal, to use his testimony at trial against him to show a lack of standing. Unless the rule is enforced in both directions, the State would be allowed to argue on appeal that, although the rule of *Simmons* allows the defendant to take contrary positions before the trial court for purposes of the Fourth Amendment and criminal liability, his exercising of that right could be used *on appeal* to strike down any Fourth Amendment claim, based on there being no standing, using his testimony at trial that he did not have a privacy interest in the place or thing searched.

Unless it is enforced in both directions, the rule of *Simmons*, while eliminating the evil targeted by the rule for purposes of trial, would subsequently be rendered useless on appeal. In addition, unless the rule is enforced in both directions, the State would be allowed to have it both ways at trial and on appeal, while asserting a different rule for the defendant on appeal. The government's having it both ways, while denying the same to the defendant, was expressly condemned by the Court in *United States v. Salvucci*, 448 U.S. at 88, 100 S.Ct. 2547. Hence, to the extent that cases hold that the defendant's testimony at trial, denying an interest in the place or thing searched, can be used against him on appeal to establish that he did not have standing to challenge the search, *i.e.*, *State v. Clark*, 136 S.W.3d at

586; *State v. Stillman,* 938 S.W.2d at 291, they are wrong and should not be followed.

 Here, the evidence was that the methamphetamine was wrapped in a blue plastic bag that was semi-transparent. That bag, however, was wrapped in an opaque white plastic bag, through which Officer Sligar testified at the suppression hearing he could not see so as to determine the nature of the contents. It is well settled, as to Fourth Amendment standing, that a defendant can have a legitimate expectation of privacy in personal items regardless of location. *State v. Looney,* 911 S.W.2d 642, 644 (Mo.App.1995). It is also well settled that a defendant can have a legitimate expectation of privacy with respect to contraband placed in a closed, opaque container to conceal it. *Id.; State v. Courtney,* 102 S.W.3d 81, 85 (Mo.App. 2003). Thus, in our case, the appellant *could* conceivably have a legitimate expectation of privacy in the white plastic bag containing the methamphetamine. However, the problem in determining that issue, here, is that, having reviewed the record before us in great detail, we find that it is totally devoid of any evidence from which it can be inferred, either way, as to the appellant's having an interest in the white plastic bag.

 Generally, where there is no evidence presented on which to decide an issue, the party with the burden of proof on that issue loses. *See State v. Birmingham,* 132 S.W.3d 318, 323 (Mo.App.2004). In other words, that party is said to suffer the burden of non-persuasion. Hence, inasmuch as the record here is totally devoid of any evidence from which the trial court

could have made an affirmative decision as to the appellant's Fourth Amendment standing, as to the white plastic bag containing the methamphetamine, and the appellant had the burden of proof on standing below, we would logically expect that he would lose on that issue. However, that expectation proves to be incorrect, according to the U.S. Supreme Court in *Combs v. United States,* 408 U.S. 224, 226, 92 S.Ct. 2284, 2285, 33 L.Ed.2d 308 (1972).[5]

In *Combs,* the defendant, who was charged with violating 18 U.S.C. § 659 "by receiving, possessing, and concealing 26 cases of tax-paid whiskey known by them to have been stolen from an interstate shipment," sought to suppress the whiskey, which was found during the execution of a search warrant. *Combs,* 408 U.S. at 225–26, 92 S.Ct. 2284. The defendant challenged the seizure as being violative of the Fourth Amendment, asserting that there was no probable cause showing sufficient to support the issuance of the warrant. *Id.* at 226, 92 S.Ct. 2284. In overruling the defendant's motion to suppress, the District Court ruled that he lacked standing to challenge the legality of the search and seizure. *Id.* The Court of Appeals affirmed, but the U.S. Supreme Court reversed and remanded for a factual determination of standing.

In reversing and remanding, the *Combs* Court recognized that the defendant had not asserted, either at the suppression hearing or at trial, that he had a possessory or proprietary interest in the searched item or thing, which, the Court opined, could have been explained by the failure of the government to make any challenge to

5. *Combs* was decided before *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), which discarded reliance on concepts of standing. However, the rationale of *Combs* remains valid, whether the issue of the defendant's burden is characterized as a question

of standing or of substantive Fourth Amendment law, and so *Combs* is still followed by courts. *See, generally,* 5 WAYNE LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.7(e), at 420–26. (3d ed.1996).

the defendant's standing. *Id.* at 227–28, 92 S.Ct. 2284. The Court concluded, however:

> In any event, the record now before us is virtually barren of the facts necessary to determine whether [defendant] had an interest in connection with the searched premises that gave rise to a reasonable expectation on his part of freedom from governmental intrusion upon those premises. If [defendant] can establish facts showing such an interest, he will have demonstrated a basis for standing to attack the search; re-examination of the validity of the warrant in light of the Government's present position on that issue would then be appropriate to resolve the question whether evidence of the seized whiskey was properly introduced at [defendant's] trial.

*Id.* (citations omitted). The Court does not give any rationale for why the issue of standing was remanded to the trial court, rather than simply finding against the defendant for failing to carry his burden of proof on that issue. The answer may be that the Court chose this procedural course of action as a compromise.

Conceivably, the *Combs* Court could have ruled against the defendant on the issue of standing because he had the burden of proof at trial and, therefore, he should suffer the burden of non-persuasion. However, as one legal commentator pointed out, when it comes to allocating the burden of proof, with respect to Fourth Amendment claims: "[I]t is most unlikely that the Court would find it constitutionally permissible for a state to impose burdens of proof upon defendants to such a degree and extent as to foreclose 'a reliable and clear-cut determination' of Fourth Amendment claims." LAFAVE, p. 56 (*citing Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). Hence, in a *Combs*-type case where, at the trial level, the defendant fails to assert Fourth Amendment standing and the State does not challenge it, the Court would not be inclined to allow the issue to be resolved on appeal simply on the basis that the appellant had been allocated the burden of proof thereon and had failed to present any evidence to satisfy that burden. In fact, as noted by LaFave:

> [s]ome courts take an even tougher stance in a *Combs* type of case, that is, where the prosecution prevailed at the trial level on the merits. They view the issue of standing ... as out of the case entirely because it was not also put into issue by the prosecution originally. In support, it is argued that traditional policies of notice and fair play mandate the conclusion that if the prosecution fails to raise the standing issue, but instead opposes the motion on the merits, the defendant is entitled to infer that the State concedes his standing, and that such a rule promotes the avoidance of unnecessary litigation which is a key purpose of the standing requirement.

§ 11.7(e), at 426. However, what the Court decided in *Combs* was that, rather than ruling against the State, on the basis that it had essentially conceded standing by not challenging it below, or against the defendant, on the basis that he had the burden of proof, it would strike a compromise and remand the case to afford the trial court an opportunity to make a "reliable and clear-cut" determination concerning whether the defendant had Fourth Amendment standing.

We are bound by the decisions of the U.S. Supreme Court concerning Fourth Amendment claims. *Rodgers v. Danforth*, 486 S.W.2d 258, 259 (Mo. *banc* 1972). Hence, inasmuch as the record in the case before us is totally barren of any facts on which the trial court could make a reliable and clear-cut determination as to whether

the appellant had Fourth Amendment standing as to the white plastic bag, containing the methamphetamine, we would be required by *Combs* to remand that issue to the trial court for further consideration consistent with this opinion. 408 U.S. at 228, 92 S.Ct. at 2286. However, before doing so, we must first address the State's alternative contention as to why the trial court was correct in denying the appellant's motion to suppress, that even if the appellant had Fourth Amendment standing to challenge the seizure, the inventory search exception applied so as to justify the warrantless seizure of the methamphetamine. This is so in that, as we noted, *supra,* under out standard of review, we are to affirm the trial court's denial of the appellant's motion on any basis supported by the record. *State v. Wells,* 33 S.W.3d at 205. Hence, if we find that the inventory search exception applied here to justify the opening of the white plastic bag containing the methamphetamine, then we must affirm, rendering the issue of standing with respect thereto moot such that there would be no need to reverse and remand for a determination of standing by the trial court.

## B. Inventory Search Exception to Fourth Amendment Warrant Requirement

■ The State contends that it satisfied its burden under § 542.296.6 to show, by a preponderance of the evidence, that the appellant's motion to suppress the seizure of the methamphetamine should be overruled because the evidence was sufficient for the trial court to conclude that the seizure was valid under the inventory search exception to the warrant requirement of the Fourth Amendment. We disagree.

■ As our Missouri Supreme Court recognized in *State v. Jones,* 865

S.W.2d at 660 (*quoting Bertine,* 479 U.S. at 371, 107 S.Ct. at 741), "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." In the case of a valid inventory search, the Fourth Amendment "policies requiring a warrant or probable cause" are not implicated. *State v. Jones,* 865 S.W.2d at 660. The purpose of the inventory search exception is threefold: (1) the protection of the vehicle owner's property, (2) the protection of the police from false claims of lost property, and (3) the protection of the police from potential danger. *State v. Milliorn,* 794 S.W.2d at 185. "An inventory search is valid where reasonable police regulations for inventory procedures are administered in good faith." *State v. Jones,* 865 S.W.2d at 660.

The State, in its brief, contends that the appellant did not have Fourth Amendment standing to challenge the inventory search of the vehicle "because [he] did not own the car and [he] failed to demonstrate that he had permission to drive the vehicle." However, as we noted, *supra,* the appellant is not complaining on appeal about the legality of the inventory search of the vehicle insofar as it led to the discovery of the white plastic bag containing the methamphetamine. Rather, he is complaining that the opening of the bag, once found during the inventory search, was illegal in that the State failed to offer, as required, any evidence to show that the white plastic bag was opened in accordance with established police procedure for inventory searches. Thus, the issue is whether the opening of the bag was justified under the inventory search exception to the Fourth Amendment. The resolution of this issue requires us to determine what is the permissible scope of an inventory search with respect to the opening of closed containers found in the course of such a search.

The question of the permissible scope of inventory searches is addressed in a line of U.S. Supreme Court cases, culminating in *Florida v. Wells,* which squarely addresses inventory searches involving the opening of closed containers. In the first of these cases, *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Court held that warrantless inventory searches of impounded vehicles do not violate the Fourth Amendment when conducted pursuant to "standard police procedures." 428 U.S. at 376, 96 S.Ct. at 3100. The *Opperman* Court did not explore the question of the permissible scope of an inventory search. It did indicate that the police could search glove compartments, which, as it noted, is the customary place for ownership and registration documents. 428 U.S. at 372, 96 S.Ct. at 3098. However, it did not reach the issue of whether closed containers found inside the impounded vehicle could be opened.

In *Colorado v. Bertine,* the Court framed the question of the permissible scope of the inventory search in terms of the discretion of the officers conducting the search. The Court ruled that *Opperman* did not prohibit the exercise of police discretion in conducting an inventory search, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." 479 U.S. at 375, 107 S.Ct. at 743. However, in *Bertine,* the Court did not clearly define the parameters of permissible police discretion in opening closed containers found during an inventory search.

In *Florida v. Wells,* the Court did define the permissible scope of discretion that could be exercised by law enforcement officers in opening closed containers found during an inventory search. There, the Court held that "standardized criteria or established routine must regulate the opening of containers found during inventory searches." 495 U.S. at 4, 110 S.Ct. at 1635. (Internal citations omitted.) The Court found that the basis for this principle is that:

> an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime.

*Id.* (internal quotation marks and citations omitted). However, the Court recognized that "in forbidding uncanalized discretion to police officers conducting inventory searches, there is no reason to insist that they be conducted in a totally mechanical 'all or nothing' fashion." *Id.*

> A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and the characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors.

*Id.* Hence, in accordance with *Florida v. Wells,* for the State, here, to satisfy its burden of proving, as provided in § 542.296.6, that the appellant's motion to suppress, challenging the opening of the white plastic bag containing the methamphetamine, should be overruled on the basis that its seizure was legal under the inventory search exception to the Fourth Amendment, it had to introduce evidence

at the suppression hearing that the Parkville Police Department had standardized criteria or established routine for opening closed containers, such as the opaque white plastic bag found during the inventory search of the vehicle the appellant was driving when arrested.

The record reflects that the State did present evidence at the suppression hearing that the Parkville Police Department had a policy requiring an inventory search of all impounded vehicles. However, it did not present any evidence of standardized criteria or established routine governing the opening of closed containers found during such a search. Thus, pursuant to *Florida v. Wells,* the State failed to satisfy its burden of demonstrating that the opening of the white plastic bag containing the methamphetamine by the police was valid under the inventory search exception.

In its brief, the state ignores *Florida v. Wells,* instead citing *Colorado v. Bertine* for the more general rule, first stated in *South Dakota v. Opperman,* that inventory searches of impounded vehicles do not violate the Fourth Amendment when conducted pursuant to "standard police department procedures" concerning inventory searches. From this, the State argues that its evidence that the Parkville Police Department had a policy requiring an inventory search of all impounded vehicles, was sufficient to satisfy the requirements of the Fourth Amendment to justify the warrantless seizure of the methamphetamine under the inventory search exception. Obviously, this is a misstatement of the law, given the U.S. Supreme Court's holding in *Florida v. Wells,* as we discuss, *supra.*

The State also cites *State v. Meza* for the same proposition that it cites *Colorado v. Bertine.* In *State v. Meza,* decided by this court, the defendant challenged on appeal the denial of his motion to suppress

3.25 pounds of marijuana found in his vehicle when he was arrested for careless driving, claiming that the search, which disclosed the marijuana in a zipped bag in the trunk of the car, was not justified under the inventory search exception, as contended by the State. 941 S.W.2d 779, 780 (Mo.App.1997). This court ruled against the defendant on that issue. *Id.* at 781. In doing so, we stated that "police may inventory property in their possession when they do so in accordance with standard operating procedures." *Id.* (citing *Colorado v. Bertine,* 479 U.S. at 372, 107 S.Ct. 738).

*State v. Meza* is distinguishable from the case at bar and is not persuasive. Unlike in our case, in *State v. Meza* the defendant was not challenging the validity of the inventory search on the basis that there was no evidence of a standardized criteria or established routine governing the opening of closed containers found during an inventory search. Rather, there, in holding that the inventory search was conducted pursuant to standard operating procedures, this court was simply addressing the defendant's contention that the inventory search in question was unnecessary in that he was only being briefly detained to post bond on a traffic matter which did "not implicate the need [to protect an owner's property while it is in the custody of the police], nor [did] it justify the opening of a zipped bag in a locked trunk." *Id.* at 781. Thus, *State v. Meza* cannot be cited for the proposition asserted by the State here and is not controlling. And, in any event, it would be trumped by the U.S. Supreme Court's holding in *Florida v. Wells.*

## C. Summary of Point I

For the reasons stated, *supra,* the opening of the white plastic bag containing the methamphetamine and found during the

inventory search of the vehicle the appellant was driving when arrested, was illegal under the inventory exception of the Fourth Amendment. And, because the State presented no evidence that the warrantless seizure of the methamphetamine was justified under any other recognized exception to the Fourth Amendment warrant requirement, the trial court's denial of the appellant's motion to suppress was error, unless it determines on remand that the appellant lacked Fourth Amendment standing to challenge the seizure.

## II.

In Point II, the appellant claims that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence on the offense of unlawful use of a weapon because the State failed to prove, as required by due process, each and every element of the charged offense beyond a reasonable doubt. Specifically, he claims that the State failed to prove that the handgun, which was seized from the vehicle he was driving, was functional. We disagree.

The review of a trial court's denial of a motion for judgment of acquittal is the same as reviewing a claim that there was insufficient evidence to convict the defendant of the charged offense. *State v. Bass,* 81 S.W.3d 595, 614 (Mo.App.2002). Our standard of review in a criminal appeal challenging the sufficiency of the evidence is set forth in *State v. Robinson,* 108 S.W.3d 689, 692 (Mo.App.2003):

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the 'submissibility' of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ 'a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored.

To convict a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt each and every element of the charged offense. *State v. Sellars,* 98 S.W.3d 124, 127 (Mo.App.2003). Here, the appellant was convicted of unlawfully using a weapon, in violation of § 571.030.1(1), which provides: "A person commits the crime of unlawful use of weapons if he or she knowingly ... [c]arries concealed upon or about his or her person a knife, a

firearm, a blackjack or any other weapon readily capable of lethal use." The essential elements of this offense "are the knowing concealment and accessibility of a functional lethal weapon." *State v. Purlee,* 839 S.W.2d 584, 590 (Mo. *banc* 1992).

In claiming that the State failed to prove all of the elements of the charged offense of unlawful use of a weapon, the appellant relies on § 571.030.3, which provides that § 571.030.1(1) does not apply "when the actor is transporting such weapons in a nonfunctioning state." The appellant contends that, pursuant to this statutory scheme, the State had the burden of proving beyond a reasonable doubt that the handgun seized from the vehicle was functioning, which it did not do.

The appellant's claim fails to consider that § 571.030.3, the "non-lethal use exemption," is a special negative defense which must be properly raised by the defendant by introducing evidence that the weapon was in a ·nonfunctioning state. *State v. Davis,* 71 S.W.3d 659, 666 (Mo. App.2002). If the exemption is properly injected into the trial by the defendant, then, and only then, does the State have the burden to prove beyond ·a reasonable doubt that the exemption does not apply. *Id.*

In this case, the appellant makes no claim that he injected the non-lethal use exemption at trial, and there is nothing in the record on appeal suggesting that he did. And, as we noted, *supra,* the appellant has failed to include in the record on appeal that portion of the trial transcript concerning his evidence at trial. Accordingly, we presume that the omitted evidence would be unfavorable to his claim on appeal. *State v. King,* 873 S.W.2d 905, 907 n. 3 (Mo.App.1994). Because the appellant has failed to demonstrate on appeal that he properly injected the special negative defense of the "non-lethal use exemption,"

the exemption did not apply such that the State met its burden of proving the elements of the offense, without proving that the weapon was functional. Hence, the trial court did not err in overruling his motion for judgment of acquittal based on the State's failure to prove that element.

Point denied.

## Conclusion

The circuit court's judgment of the appellant's conviction for unlawful use of a weapon is affirmed. The court's judgment of his conviction for trafficking in the second degree is reversed, and the cause is remanded to the court with directions for the purpose of determining whether the appellant had Fourth Amendment standing to challenge the warrantless seizure of the methamphetamine. In the event the circuit court determines that the appellant *did* have such standing, the reversal of the appellant's conviction for trafficking becomes final, inasmuch as we have already determined that no exception to the Fourth Amendment justifying the warrantless seizure of the methamphetamine was proven, and the State would not have any appeal from the court's standing ruling in that it would not be an interlocutory ruling under § 547.200. However, if the circuit court finds that the appellant *did not* have standing, the appellant would have· the right to appeal that issue alone to this court.

LOWENSTEIN and SPINDEN, JJ., concur.